J-A01002-16

2016 PA Super 38

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RASHEEN J. BROWN | |
| Appellant | No. 3047 EDA 2013 |

Appeal from the Order October 30, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002569-2012

BEFORE:  LAZARUS, J., OTT, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED FEBRUARY 17, 2016**

Appellant Rasheen J. Brown appeals the judgment of sentence entered by the Honorable Glenn B. Bronson of the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of first-degree murder, conspiracy to commit murder, possession of a firearm by a prohibited person, carrying a firearm on a public street or public property in Philadelphia, and possessing an instrument of crime.[1]  Appellant alleges that (1) his convictions are against the weight of the evidence, (2) the trial court abused its discretion in various evidentiary decisions, (3) the prosecutor made improper statements in closing argument, (4) the trial court gave an erroneous jury instruction, and (5) after-discovered evidence entitles him to a new trial.  After careful review, we affirm.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 903, 6105(a)(1), 6108, and 907, respectively.

*Former Justice specially assigned to the Superior Court.

On October 17, 2011, shortly before midnight, Akkier McKinney ("the victim") and a man identified by the nickname "Sheed" began to argue on the sidewalk in front of El Ran's Bar in the Frankford section of Philadelphia. The victim accused Sheed of being disrespectful and asked Sheed to step into the street to fight. Sheed responded to the victim: "I don't do this fighting, I play with guns." N.T., 6/20/13, at 160.

Witnesses began to gather outside the bar as the two men continued their heated exchange. Four of Sheed's friends, including Appellant, Christopher Graham, Alan Jackson, and an unidentified man in a gray hoodie came out of the bar to help Sheed. After Sheed told Appellant to "get the .40," Appellant walked off with Graham and the man in the hoodie. *Id.* at 21. Sheed and Jackson continued to argue with the victim, who was now sitting in the driver's seat of his vehicle. Shortly thereafter, Appellant returned to the scene in a silver car, exited the vehicle, and approached the victim's vehicle. Looking at Sheed and Appellant, the victim stated "Oh, I see how you all trying to do." *Id.* at 162. Once Sheed yelled "light him the fuck up," Appellant fired his weapon at the victim several times. *Id.*

William Fowler, the bartender at El Ran's Bar, who had observed the altercation and shooting, ran back into the bar for cover. Once the shooting ceased, Fowler exited the bar and found the victim alive, twitching with broken glass in his eyes from the shattered driver's side window of his vehicle. Fowler contacted the police, who transported the victim to the hospital, where he was pronounced dead. The victim sustained gunshot

wounds to the head, abdomen, and thigh. Officers retrieved five .40 caliber Smith & Wesson cartridge casings from the crime scene. Fowler and another eyewitness, Lalana Brown, gave statements to the police about the shooting. Fowler was able to identify Appellant, who he knew, as the shooter.

Police also questioned Graham, who told police he had not witnessed the shooting but heard gunshots from around the street corner. Graham indicated he called Appellant's cell phone repeatedly, but was unable to reach him. However, the morning after the shooting, Graham met with Appellant and asked what had happened to the victim. Appellant laughed and replied, "he's done, it's over, finito." *Id.* at 22. After police showed Graham still photographs taken from the bar's surveillance video, Graham identified Appellant as being present at the shooting.

Appellant proceeded to a jury trial that commenced on June 18, 2013. During trial, the Commonwealth called Fowler, Brown, and Graham to testify, but all three witnesses recanted their accounts of the crime. Brown and Graham claimed to have been intoxicated when they gave their initial statements to police and were uncooperative with the prosecutor on direct examination. Fowler alleged that the police coerced his written statement as he was not given anything to drink for twelve hours and asserted the officers punched and slapped him until he identified Appellant as the shooter. The Commonwealth introduced into evidence Fowler, Brown, and Graham's initial accounts of the shooting as prior inconsistent statements.

At the conclusion of the trial, on June 26, 2013, a jury convicted Appellant of the aforementioned offenses. On the same day, the trial court imposed a mandatory life sentence for Appellant's first-degree murder conviction pursuant to 18 Pa.C.S.A. § 1102(a)(1). On July 1, 2013, Appellant filed a post-sentence motion through counsel, but subsequently filed a petition to proceed *pro se*. On September 6, 2013, the trial court held a hearing pursuant to **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1998), and granted Appellant leave to proceed *pro se*. After Appellant adopted the post-sentence motion previously filed by counsel, the trial court denied the post-sentence motion on October 16, 2013. Appellant filed this timely appeal on October 30, 2013.

Although Appellant had been permitted to proceed *pro se*, Appellant reconsidered his request and filed a motion asking to be reappointed counsel, claiming he had been placed in a Restricted Housing Unit and had little access to a typewriter, paper, or the materials necessary to represent himself on appeal. On November 15, 2013, Appellant complied with the trial court's request to submit a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), with the caveat that he was never provided access to his trial transcripts and again asked for counsel to preserve his desired claims for appeal. The trial court filed its Rule 1925(a) opinion, finding several of Appellant's claims waived for lack of specificity.

On April 7, 2014, Appellant filed a Petition to Suspend the Filing of Appellant's Brief, asserting there had been a breakdown in the judicial process as the court clerk failed to file the complete record. On April 22, 2014, Appellant filed an Application for the Appointment of Counsel. On May 5, 2014, this Court entered a *per curiam* order directing the trial court to certify and transmit a supplemental record to this Court. As Attorney Jason Kadish entered his appearance on Appellant's behalf on April 24, 2014, this Court denied Appellant's request for counsel as moot and permitted Appellant to file an amended 1925(b) statement through counsel.

Appellant raises six issues for our review on appeal:

1) Whether the guilty verdicts as to the charges of murder of the first degree, conspiracy to commit murder of the first degree, possession of a firearm prohibited, carrying a firearm on a public street, and possessing an instrument of crime were against the weight of the evidence?

2) Whether [the] Commonwealth impermissibly elicited testimony regarding the Appellant being in custody and having a prior record?

3) Whether Philadelphia Police Detective James Dunlap was, in error, allowed to narrate, interpret, identify, and describe the events and individuals depicted in the surveillance video played to the jury?

   a. Whether the Commonwealth was erroneously permitted to play the surveillance video frame-by-frame when it was not provided in a frame-by-frame format in discovery and defense counsel lacked the ability to view the video frame-by-frame prior to its introduction by the Commonwealth at trial?

4) Whether the prosecutor during her closing statement, impermissibly argued the following thereby depriving the Appellant of a fair trial?

    a. Fear and intimidation were the reason for the recantations of several Commonwealth witnesses during their testimony when there existed not one iota of evidence regarding witness intimidation or coercion.

    b. The Appellant was "D'Bo's brother," and therefore, one would expect the Appellant to have a propensity for using and/or possessing firearms.

    c. Her belief/opinion that the written statements allegedly provided by witnesses William Fowler and Christopher Graham to the Philadelphia Police Department were "the truth."

5) Whether the trial court erred by erroneously instructing the jury as to the concept of reasonable doubt?

6) Whether the instant matter should be remanded to the trial court for a hearing on after-discovered evidence.

Appellant's Brief, at 6-7.

Appellant first challenges the weight of the evidence supporting each of his convictions. Our standard of review in evaluating a challenge to the weight of the evidence is well-established:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751–52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 Pa. at 319–20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id.** at 320,

744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 560 Pa. at 321–22, 744 A.2d at 753 (emphasis added).

**Commonwealth v. Clay**, 619 Pa. 423, 431-32, 64 A.3d 1049, 1054-55 (2013).

Appellant broadly asserts that the weight of the evidence does not support the Commonwealth's theory that he was the perpetrator responsible for the victim's death. Appellant contends Fowler's initial statement identifying him as the shooter was unreliable as Fowler claims he was

coerced into making this accusation after officers kept him at the police station for twelve hours and subjected him to physical and psychological abuse. As noted above, Fowler recanted at trial and denied seeing who shot the victim. Appellant argues Fowler's identification is contradicted by video surveillance outside the bar which Appellant alleges shows he was across the street from the victim's vehicle at the time of the shooting. Appellant also points to the testimony of Officer Raymond Andrejczak, the Commonwealth's ballistics expert, who opined that the shooter was likely within three to five feet of the victim at the time of the shooting based on the location of the recovered cartridge casings.

As noted above, we need only assess the trial court's exercise of discretion in evaluating whether the jury's decision to give more weight to certain facts constitutes a denial of justice. The trial court determined there were no grounds to disturb the jury's credibility findings or reweigh the evidence after examining all of the evidence. In his initial statement to police, Graham shared that Sheed directed Appellant to go "get the .40" as Sheed was having a heated altercation with the victim. N.T., 6/20/13, at 21. Commonwealth witness Fowler told police that Appellant returned to the scene and opened fire on the victim after Sheed directed Appellant to "light him the fuck up." *Id.* at 162. Upon investigation of the scene, officers recovered fired cartridge casings from a .40 caliber semiautomatic weapon.

Although Appellant discounts Fowler and Graham's statements to police as they later recanted at trial, the jury was free to credit the

witnesses' prior inconsistent statements over their recantations. In a similar case, the Pennsylvania Supreme Court held that the prior inconsistent statements of witnesses who recanted at trial constituted sufficient evidence to support the defendant's murder conviction when the witnesses testified at trial and were subject to cross-examination before a factfinder that could reasonably credit the prior statements over the witnesses' in-court recantations. ***Commonwealth v. Brown***, 617 Pa. 107, 154, 52 A.3d 1139, 1168 (2012).

Although Graham and Fowler recanted their accounts of the crime at trial, they were subject to cross-examination before the jury and presented explanations for making the inconsistent statements. While Graham claimed he was intoxicated when he gave his statement to police, the interviewing officer testified there was no indication that Graham was under the influence of any drugs or alcohol at that time. Although Fowler alleged he was forced to identify Appellant by the coercive and abusive environment at the police station, officers denied any such abuse and explained Fowler could not be interviewed for an extended period of time that evening as the department was investigating four separate homicides. Officers noted that Fowler was initially reluctant to give an account of the shooting, but fully cooperated with police before trial. In his formal statement to police, Fowler admitted he was fearful of the consequences of talking with police, indicating, "I'm sorry I didn't tell you guys everything the first time. I'm just scared. This is how people get killed and I don't want to be that guy." N.T., 6/20/13, at 15,

24. In addition, the prosecutor impeached Fowler's credibility when Fowler claimed he did not know Appellant before trial by presenting prison visitor logs that showed that Fowler visited Appellant in prison after the shooting. The jury had a full opportunity to observe the witnesses and assess the credibility of their explanations for the recantations.

Moreover, while Appellant claims that the surveillance videos outside the bar prove he was not the shooter, the trial court explained that the "video did not depict the shooter because of the angle of the camera [but] showed the events leading up to the shooting and the aftermath." Trial Court Opinion, 3/7/14, at 5. After reviewing all the evidence, the jury found that the credible evidence identified Appellant as the shooter. As such, we conclude the trial court properly exercised its discretion in finding the jury's verdict was not so contrary to the evidence as to shock the conscience.

Second, Appellant asserts the prosecutor improperly elicited evidence that Appellant was incarcerated when cross-examining Graham. The trial court found the Commonwealth properly attempted to impeach Graham following his assertion that he never knew Appellant by pointing out that prison logs showed Graham visited Appellant in prison:

> [Prosecutor:] Do you remember visiting [Appellant] while he was in custody prior to this case?
>
> [Graham:] I don't remember.
>
> [Defense counsel:] Objection.

- 10 -

[Prosecutor:] I'm sorry. When he was in custody since his arrest for this case is what I meant.

[Trial Court:] Yes, yes.

[Prosecutor:] Prior to your testimony is what I meant.

[Trial Court:] Ok.

[Graham:] I don't know. I don't remember that.

N.T., 6/19/13, at 203-204. Appellant also takes issue with the fact that the prosecutor mentioned Appellant's inmate number in an attempt to refresh Graham's memory that he signed a prison log to visit Appellant before trial.

Appellant's claim fails as the prosecutor did not suggest Appellant had been incarcerated for another crime, but clarified Appellant was in custody for the instant charges. To further ensure that these comments did not cause any confusion, the trial court instructed the jury that they were to consider the evidence that Graham visited Appellant in prison for the sole issue of whether Graham contacted Appellant before trial and cautioned the jury that they should not draw any adverse inference against Appellant based on his arrest in this case. *Id*. at 207. As a result, Appellant is not entitled to relief on this claim.

Third, Appellant argues that the trial court erred in allowing Philadelphia Police Detective James Dunlap to narrate and describe events and individuals in the surveillance video that was played to the jury. In addition, Appellant claims that the Commonwealth should not have been

allowed to play the video frame by frame as the defense lacked the ability to view the video in this manner before its admission at trial.

In reviewing a challenge to the admissibility of evidence, we note that such matters are within the sound discretion of the trial court and thus, we "will reverse the trial court's decision only if the appellant sustains the heavy burden to show that the trial court has abused its discretion." ***Commonwealth v. Christine***, ___Pa.___, 125 A.3d 394, 398 (2015) (citation omitted).

> It is not sufficient to persuade the appellate court that it might have reached a different conclusion; it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Id.*** (citation omitted).

Pennsylvania Rule of Evidence 701 provides a lay witness may offer opinion testimony as long as the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701.

After allowing the Commonwealth to present the surveillance video to the jury, the trial court permitted Detective Dunlap to give limited testimony to direct the jury's attention to specific images depicted in the video. When

defense counsel objected to Detective Dunlap's identification of an individual in the video, the trial court sustained the objection, prohibited Detective Dunlap from speculating as to the identities of individuals seen in the footage, and instructed the jury that their own observations controlled. The trial court allowed Detective Dunlap to describe images on the video and call attention to specific portions of the video. Accordingly, the trial court found Detective Dunlap's commentary was rationally based on his observations and assisted the jury in keeping track of the various individuals appearing on the video.[2] We conclude the trial court acted within its discretion in allowing Detective Dunlap to offer his observations to assist the jury.

Likewise, Appellant's claim that the Commonwealth should not have been permitted to show the surveillance video frame by frame is also without merit. As the Commonwealth complied with discovery in providing the defense with the video before trial, Appellant has not established that the Commonwealth was responsible for the defense's failure to review the video at different speeds. The prosecution presented the video in a manner that was helpful to the jury to better visualize the events that occurred the night of the shooting. *See Commonwealth v. Jordan*, 619 Pa. 513, 534, 65 A.3d 318, 330 (2013) (concluding the trial court properly exercised its discretion in allowing the prosecutor to show the surveillance video in slow

---

[2] Appellant does not contend Detective Dunlap's testimony was based on scientific, technical, or other specialized knowledge.

motion). As a result, the trial court did not abuse its discretion in allowing the jury to view the video frame by frame.

Fourth, Appellant argues that the trial court should have granted a mistrial as the prosecutor committed misconduct with respect to three comments she made during closing argument. In reviewing the denial of a motion for a mistrial, we evaluate whether the trial court abused its discretion. *Commonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa.Super. 2015).

> [i]t is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Id.* (citations omitted). "Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial." *Commonwealth v. Watkins*, ___Pa.___, 108 A.3d 692, 720-21 (2014). A mistrial is "required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015). Moreover, a trial court may issue curative instructions to remove taint unless after a review of all the circumstances it determines that a curative instruction would be insufficient, warranting the extreme remedy of a mistrial. *Id*.

Appellant argues that it was improper for the prosecution to speculate on the reasons for the Commonwealth's witnesses to recant their original statements to police and suggest that they were fearful of identifying Appellant in the courtroom. However, the record shows that Fowler admitted his fear of cooperating with the police in his initial statement, indicating, "I'm sorry I didn't tell you guys everything the first time. I'm just scared. This is how people get killed and I don't want to be that guy." N.T. 6/20/13, at 15, 24. As such, we agree with the trial court that it was a fair inference to expect that Fowler and Graham, who lived in the same neighborhood as Appellant, would be concerned about the consequences of giving testimony in open court identifying Appellant as the shooter. Further, the prosecutor did not suggest that Appellant had threatened the witnesses but merely offered fear as a possible explanation for the witnesses' recantation of their original statements implicating Appellant in the shooting. As a result, no further review of this claim is warranted.

In addition, Appellant argues that he is entitled to a new trial as the prosecutor suggested in closing argument that Appellant had a propensity to handle firearms. The relevant comments are as follows:

> [Prosecutor:] You also got to hear a little bit about this defendant's family, that he is D'Bo's brother. D'Bo also uses guns, also shoots at people, and also hangs around the same neighborhood. So what do we know about that? That he may be more familiar because his brother is familiar with guns.
>
> [Defense Counsel:] Objection.

- 15 -

N.T. 6/25/13, at 79-80. The trial court immediately sustained the objection, stating, "I don't recall evidence of what actually happened, who was arrested and charged but I think the evidence was that the charge was dropped so I'll sustain the objection." *Id*. at 80.

Defense counsel did not make a more specific objection or request any further action on the part of the trial court, allowing the prosecutor to continue with her closing argument. As Appellant did not specifically request a mistrial or a curative instruction, his argument is waived on appeal. ***Commonwealth v. Sandusky***, 77 A.3d 663, 670 (Pa. Super. 2013) (noting that "[e]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver").

Appellant also claims in a one-sentence argument that the prosecutor improperly offered her personal opinion that the written statements Fowler and Graham gave to police were the truth. Appellant failed to preserve this claim for appeal as he did not object to the prosecutor's statement at trial and raises this argument for the first time on appeal. ***See*** Pa.R.A.P. 302(a) (stating "issues not raised in trial court are waived and cannot be raised for first time on appeal"). Accordingly, we find this argument waived.

In his fifth claim of error, Appellant argues that the trial court erroneously instructed the jury as to the concept of reasonable doubt. The trial court acknowledges it misspoke when it made the following statement:

[s]o to summarize, it is the Commonwealth that has the burden of proof and must proof [sic] the defendant guilty beyond a reasonable doubt. *If the defendant has met that burden*, then the defendant is no longer presumed to be innocent and you should find him guilty. On the other hand, if the Commonwealth has not met that burden, then you must find him not guilty.

N.T., 6/25/13, at 91 (emphasis added).

As Appellant concedes, this argument is also waived as Appellant did not object to the instruction before the trial court, who could have easily corrected the misstatement before the jury. Moreover, any confusion caused by this remark would have caused minimal prejudice as the trial court repeatedly emphasized in its instructions at the beginning and conclusion of the trial that the Commonwealth had the burden of proving Appellant guilty beyond a reasonable doubt. As a result, we decline to review this claim further.

Lastly, Appellant claims this Court should remand to the trial court for a hearing on after-discovered evidence. Appellant offers two newspaper articles concerning possible misconduct on the part of Philadelphia Police Detectives Ronald Dove and James Pitts, who took the statements of Brown and Fowler, who later recanted at trial in this case. One article from the *Philadelphia Inquirer*, dated November 21, 2013, reports that Detective Dove was suspended from his duties pending an internal investigation into allegations that Dove covering up homicides connected to his girlfriend, Erica

Sanchez.[3]   The other article from the *Philadelphia Daily News*, dated November 6, 2013, discusses three unrelated criminal cases where defendants claimed that Detective Pitts employed aggressive interrogation tactics to coerce them into giving false statements.

To warrant a new trial based on after-discovered evidence, the appellant must show that the evidence "(1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict." **Commonwealth v. Castro**, 625 Pa. 582, 588, 93 A.3d 818, 821 (2014) (quoting **Commonwealth v. Pagan**, 597 Pa. 69, 950 A.2d 270, 292 (2008)). In addition, "the proposed new evidence must be producible and admissible." **Commonwealth v. Chamberlain**, 612 Pa. 107, 164, 30 A.3d 381, 414 (2011) (citation omitted).

We acknowledge that in **Castro**, our Supreme Court held that allegations in a newspaper article "do not constitute evidence" and thus, were not sufficient to support a motion for an evidentiary hearing or a new trial. The Supreme Court specifically stated:

---

[3] **See** Mike Newall and Aubrey Whelan, "Homicide detective under investigation to be fired," *Philadelphia Inquirer*, Nov. 10, 2013; Mensah M. Dean, "Same 2 Cops Built 3 Murder Cases that Fell Apart," *Philadelphia Daily News*, Nov. 6, 2013.

> [a]llegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation. Nothing in these allegations even read in the broadest sense, can be described as "evidence," and references to the officer being under investigation for misconduct contains no information regarding what evidence existed to substantiate this averment. One cannot glean from these bald allegations what evidence of misconduct appellee intended to produce at the hearing.

*Castro*, 625 Pa. at 595, 93 A.3d at 825. As "an evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim," the Supreme Court concluded that Castro "needed to do more than present an article pointing to allegations that if true have the potential to aid his cause; he needed to clearly articulate in his motion what evidence he would present to meet the test." *Id*. at 598-99, 93 A.3d at 828.

With respect to the allegations regarding Detective Dove, Appellant solely relies on the newspaper article reporting on Dove's possible misconduct and does not articulate what evidence he would present at the evidentiary hearing on remand. In accordance with *Castro*, the article concerning Detective Dove does not constitute after-discovered evidence that entitles Appellant to a new trial.

With respect to Appellant's allegations that Detective Pitts coerced Fowler into making a false identification, Appellant referenced the aforementioned newspaper article and argues that he would subpoena the testimony of three individuals, Nafis Pinkney, Shaquille Rainey, and Unique Drayton, all of whom claimed that Detective Pitts used aggressive and

violent tactics to pressure them into making false statements in murder investigations.

However, even assuming such testimony is producible and admissible at an evidentiary hearing, these statements would solely be used to impeach Detective Pitts's credibility. The proposed witnesses, if available to testify, would allege that Detective Pitts committed misconduct in coercing their statements in other murder cases, but none of the witnesses can provide any new evidence concerning his conduct in this case. As such, Appellant has not shown that he is entitled to a new trial by presenting after-discovered evidence that will not be used solely to impeach a witness's credibility as required by **Castro**. **Id**. at 588, 93 A.3d at 821. Accordingly, we deny Appellant's motion for an evidentiary hearing on his proposed after-discovered evidence.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2016