J-S60014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIE SPARROW, | |
| Appellant | No. 2240 EDA 2015 |

Appeal from the Judgment of Sentence June 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002859-2014

BEFORE:  SHOGAN, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 25, 2016**

Willie Sparrow ("Appellant") appeals from the judgment of sentence imposed after the trial court convicted him of aggravated assault, simple assault, recklessly endangering another person, possession of a prohibited firearm, carrying a firearm without a license, carrying a firearm on a public street, and possessing instruments of crime.  After review, we affirm.

The trial court recounted the factual history, as follows:

> On February 3, 2014, at about 12:00 a.m., Mr. Luis Rodriguez and his wife were in the area of the 4300 block of North 7th Street in Philadelphia sitting in his car waiting for his son to return home when Mr. Rodriguez saw Appellant, someone he knew for fourteen or fifteen years, driving north on 7th Street with a Hispanic male.  Mr. Rodriguez recognized both men because they patronized a store Mr. Rodriguez formerly owned.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

After parking the car, Mr. Rodriguez helped his wife down the street to their home because the street was snow covered. As he and his wife were walking home, Mr. Rodriguez heard gun fire and saw Appellant, who he knew by the name "Tall," and the Hispanic male, shooting toward him and his wife from a location approximately five houses behind him. One of the bullets struck Mr. Rodriguez in his leg.

After he was shot, Mr. Rodriguez grabbed hold of his car to prevent himself from falling. Thereafter, his brother Angel and his wife came to his assistance. The police and an ambulance arrived shortly thereafter and transported Mr. Rodriguez to a nearby hospital, where police interviewed him. During the interview, Mr. Rodriguez told police that he could not identify his assailants. However, he admitted at trial that he had lied to the police about knowing who shot him because he wanted to take care of it himself. After speaking to his brother Angel, who he told at the hospital that Tall had shot him, and other members of his family, he decided to cooperate with the police.

Mr. Rodriguez was again interviewed by police on February 11, 2014. During this interview, he told police that Tall had been one of the men he saw shooting at him and also identified a photograph of Tall as one of the assailants.

Mr. Angel Rodriguez confirmed that Mr. Rodriguez told him at the hospital that Tall had shot him. Angel added that he advised his brother to tell the police who had shot him.

Philadelphia Police Detective Samuel Gonzales, one of two detectives assigned to investigate the shooting, upon learning that Appellant had been identified as one of the shooters, obtained a search warrant for Appellant's residence. The execution of the warrant failed to result in the seizure of any relevant evidence. After being told by the complainant that Appellant drove a white Buick, he obtained information from the Pennsylvania Department of Motor Vehicles that a white 1997 Buick Sedan was registered to Appellant's sister.

During the investigation of the incident, police obtained a video recording that showed the complainant and his wife in the area of 7th and Bristol Streets as well as the car the complainant said Appellant was driving.

Trial Court Opinion, 10/19/15, at 2–3 (record references and footnotes omitted).

After a bench trial on January 29, 2015, Appellant was found guilty of the aforementioned offenses. On June 19, 2015, prior to sentencing and pursuant to Pa.R.Crim.P. 704(B)(4), Appellant orally motioned for extraordinary relief arguing, *inter alia*, that the guilty verdict was against the weight of the evidence. N.T. (Sentencing), 6/19/15, at 6. The trial court denied the motion and proceeded to sentence Appellant to an aggregate term of incarceration of seven and one-half to fifteen years. Appellant filed a timely notice of appeal, and both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises one issue on appeal:

> Did not the trial court err by denying appellant's motion for a new trial, as the verdict was against the weight of the evidence where the evidence presented at Appellant's trial was so inconsistent that it did not support the verdict in this matter and a new trial was necessary in the interests of justice?

Appellant's Brief at 3.

Our standard of review in evaluating a challenge to the weight of the evidence is well-settled:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751–52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 Pa. at 319–20,

744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 538 Pa. at 435, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (Pa.1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. *Widmer*, 560 Pa. at 321–22, 744 A.2d at 753 (emphasis added).

*Commonwealth v. Brown*, 134 A.3d 1097, 1103–1104 (Pa. Super. 2016) (quoting *Commonwealth v. Clay*, 619 Pa. 423, 431–32, 64 A.3d 1049, 1054–55 (2013)). Furthermore, issues of credibility are left to the trier of fact. "[T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of

- 4 -

the evidence." ***Commonwealth v. Roberts***, 133 A.3d 759, 767 (Pa. Super. 2016) (quoting ***Commonwealth v. Brooks***, 7 A.3d 852, 856–857 (Pa. Super. 2010) (citations omitted)).

Appellant asserts that the weight of the evidence does not support a finding that he was the person who shot the victim and, in fact, his identity as the shooter was disproved by the evidence of record. Appellant contends that the victim's testimony in identifying him as the perpetrator was wholly incredible in that the victim's version of events—that after hearing shots, he turned around and saw Appellant firing a gun—was refuted by the video surveillance footage of the area that does not show the victim turning his head.

Although Appellant argues that the trial court's determination that Appellant directed his gun in the victim's direction was directly controverted by the video footage, the trial court, within its province as fact finder, viewed the video surveillance footage, and concluded that at some juncture, Appellant, while firing his gun, shot the victim in the leg. As to the purported inconsistency between the victim's statement that he turned around and saw Appellant and the video footage, the trial court remarked: "I think he saw him beforehand." N.T. (Trial), 1/29/15, at 105. Then, at sentencing, the trial court observed: "[The video] didn't show the shooting. The video showed [the victim] basically getting clipped or coming around the

corner before he got clipped because he was limping." N.T. (Sentencing), 6/19/15, at 18.

Finally, the trial court determined that the victim's identification of Appellant was believable because:

> [t]he complainant's identification of Appellant as his assailant was credible. It was predicated on the complainant's long familiarity with Appellant and his clear view of Appellant on the night of the incident. Moreover, although the complainant did not immediately identify Appellant to police, he promptly identified him to his brother on the night of the incident. This evidence more than supports the verdict.

Trial Court Opinion, 10/19/15, at 5.

Upon careful review of the record, including the video footage, we conclude that Appellant's claim that the evidence was too speculative and incredible to support his conviction is meritless. The video footage makes it difficult to determine the precise moment at which the victim was shot, this being the point at which the victim says he turned and saw Appellant firing. Thus, its evidentiary value to rebut the victim's testimony that he saw Appellant firing a gun is negligible. Certainly, the footage does not disprove that Appellant fired his gun in the direction of the victim. Additionally, the trial court determined that the victim's identification of Appellant was believable due to the victim's long-term familiarity with Appellant and because the victim promptly identified Appellant as the shooter to his brother on the night of the crime.

As noted, we need only assess the trial court's exercise of discretion in evaluating whether its decision to give more weight to certain evidence constitutes a denial of justice. The trial court determined after examining all of the evidence, that there were no grounds to disturb its credibility findings or reweigh the evidence. We find no abuse of discretion in the trial court's decision that the testimony and evidence presented by the Commonwealth was credible.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2016