J-A23044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v.    :
:
:
:
JOSE ANTONIO ROLDAN    :
:
Appellant    :    No. 441 MDA 2021

Appeal from the Judgment of Sentence Entered August 21, 2019
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-CR-0000093-2018

BEFORE:    BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED SEPTEMBER 22, 2021**

Appellant, Jose Antonio Roldan, appeals *nunc pro tunc* from the

judgment of sentence entered in the Court of Common Pleas of Columbia

County following his conviction by a jury on one count of possession of a

controlled substance contraband by an inmate, 18 Pa.C.S.A. § 5123(a.2).

After a careful review, we affirm.

The relevant facts and procedural history are as follows: On May 14,

2019, Appellant, who was represented by counsel, proceeded to a jury trial

with regard to the instant offense. At trial, Bloomsburg Police Officer Ryan

Edgar testified that, on December 24, 2017, he was on routine patrol when

he observed Keith Levan, who had an outstanding warrant, sitting in the

---

[*] Former Justice specially assigned to the Superior Court.

driver's seat of a parked vehicle. N.T., 5/14/19, at 25.  Officer Edgar observed as Mr. Levan began driving down Wood Street, at which point he effectuated a stop of the vehicle.  *Id.* at 26.  Officer Edgar took Mr. Levan into custody.  *Id.*

Officer Edgar then turned his attention to Appellant, who was sitting in the passenger seat of the vehicle.  *Id.*  Appellant was "wanted by the Pennsylvania State Parole[,]" so Officer Edgar took him into custody.  *Id.* Officer Edgar noted that, prior to handcuffing Appellant, he patted him for weapons, as well as contraband, and found neither. *Id.* at 27. Officer Edgar transported Appellant to the Bloomsburg Police Station where Appellant was placed in a holding cell, which was subject to video surveillance.  *Id.*

Megan Zielecki, an intake coordinator and assistant to the security lieutenant at the Columbia County Prison, testified she is familiar with the video surveillance system at the prison.  *Id.* at 35.  She confirmed that, on December 24, 2017, Appellant was transported from the police station to the prison, where he was subject to video surveillance.  *Id.* at 35, 36.  Ms. Zielecki testified she preserved and produced video pertaining to Appellant, and she confirmed that the recordings accurately provided a fair description of the events, which took place on December 24, 2017.  *Id.*

Corrections Officer Gerald Michael Vezendy testified that, on December 24, 2017, he participated in the intake processing of Appellant at the prison. *Id.* at 38.  He explained Appellant was patted down in the intake area, and he

then provided biographical information.  *Id.*  Officer Vezendy noted that Appellant neither disrobed nor submitted to a cavity search in the intake area. *Id.* at 39.

Officer Vezendy testified that, after initial processing, Appellant was taken to the shower room where Appellant stripped off his clothes.  *Id.* at 41. He noted the officers did a visual search of Appellant's body, including his hands and feet; however, prison personnel did not perform a cavity search as they are not permitted to do so.  *Id.*  Appellant was then permitted to shower in private with Officer Vezendy waiting outside the closed door.  *Id.*

After the shower, Appellant was permitted to get dressed in private, and he was not searched again.  *Id.* at 42.  Appellant was permitted to keep his white t-shirt.  *Id.* at 46.  Officer Vezendy testified that, prior to and after Appellant showering, the shower room itself was not searched.  *Id.* Officer Vezendy then took Appellant to prison cell 260 on the D. Block.  *Id.* at 43.

At this point, the Commonwealth played the prison video from the intake area where Appellant was processed.  *Id.*  Officer Vezendy confirmed he typed in Appellant's biographical information.  *Id.* at 44.  He noted the video showed his hands on the computer keyboard with Appellant standing directly across from him and leaning on the counter.  *Id.*  He noted that another officer had patted down Appellant prior to Appellant providing the biographical information.  *Id.*

The Commonwealth also showed video related to the shower procedure. Specifically, the following relevant exchange occurred:

[DISTRICT ATTORNEY]: I am going to advance now closer to the shower procedure because there is not a great deal here of interest. There is a gray bin at the left side of the photograph that has a dark piece of clothing in it. Do you see that?

[OFFICER VEZENDY]: Yes.

[DISTRICT ATTORNEY]: Would that have been the [Appellant's] at the time start [*sic*] of his disrobing process?

[OFFICER VEZENDY]: Should be his jacket he had on before. Someone else but [*sic*] that in there.

[DISTRICT ATTORNEY]: We see he removed his jacket and is wearing a white T-shirt?

[OFFICER VEZENDY]: Yes.

[DISTRICT ATTORNEY]: I will go further ahead. Here is [Appellant], [he] is using the phone there?

[OFFICER VEZENDY]: They get one phone call sometimes we take them in and shower and sometimes afterwards they can take their shower prior to using the phone.

[DISTRICT ATTORNEY]: Watch [Appellant's] right arm.

[DEFENSE COUNSEL]: I am going to object to that.

THE COURT: Overruled.

[DISTRICT ATTORNEY]: Watch [Appellant's] left arm.

[DEFENSE COUNSEL]: Again, make a motion to strike.

[DISTRICT ATTORNEY]: And the flick of the wrist.

[DEFENSE COUNSEL]: Again, I object to that.

THE COURT: Stop the video. Counsel go back to counsel table, please. Let's do it this way. I will instruct the Jury and the witnesses will testify. The Jury is instructed to watch everything. How is that? That is simple. The District Attorney already made his argument about what you are supposed to be looking for. That was in his opening statement. So, I will leave it to your memory to recollect that. So, let's play the video. If there are questions in context for the witness that is fair. So, that is how I am adjudicating the objection. If Counsel wants to come back up and restart the video, that is fine.

- 4 -

> In the midst of all that can we rewind it to have a clean look at it without an objection in the middle of it.

*Id.* at 45-46.  The video was then replayed for the jury.

Corrections Officer Tyler Gerringer testified he was on duty on December 24, 2017, and he was tasked with watching surveillance video outside of the D. Block.  *Id.* at 59.  Specifically, Officer Gerringer testified he was instructed to watch cell 260, which housed Appellant and Anthony Maisey, both of whom were in a locked status.  *Id.* He testified he noticed a lot of other inmates gathering around the cell, so he contacted Sergeant Shawn McCabe, who directed Officer Gerringer to "grab a couple of coworkers and move [Appellant] and Anthony Maisey to RHU to finish out their locked time…off that unit."[1]  *Id.* at 60.  He explained the RHU is across the hall from the D. Block.  *Id.*

Officer Gerringer indicated he, as well as Officers Moyer and Glenn Murchison, moved Appellant and Anthony Maisey to the RHU unit.  *Id.*  He noted the inmates were moved to the RHU unit one at a time. *Id.* He indicated Anthony "Maisey was first placed in the shower and [Appellant] placed in the day room." *Id.*

Sergeant Shawn McCabe confirmed Officer Gerringer informed him of the activity outside of Appellant's cell on the D. Block.  *Id.* at 64.  He testified he informed Officer Gerringer to move Appellant and Anthony Maisey to the

---

[1] "RHU" stands for "Restricted Housing Unit." *Id.*  "Locked time" refers to the time period an inmate is confined to a locked cell.  *Id.*

- 5 -

RHU unit, where Corrections Officer Murchison was working. *Id.* Sergeant McCabe told Officer Murchison to visually search Appellant and Anthony Maisey before they were placed in a new cell in the RHU unit. *Id.* at 64-65. The Sergeant explained a visual search involved each inmate being taken separately into the shower area, made to disrobe, and then physically searched for contraband. *Id.* at 65.

Sergeant McCabe testified that Officer Murchison reported to him that "he found inmate [Anthony] Maisey had a glove filled with a hard object substance [*sic*] inside of it." *Id.* Sergeant McCabe seized the object from Officer Murchison and turned it over to the Bloomsburg Police Department. *Id.*

Anthony Maisey, who admitted he had a lengthy criminal record, testified that, at some point on December 24, 2017, he was placed in a cell with Appellant, but he and Appellant were later removed from the cell. *Id.* at 80. He testified that, as he and Appellant were being removed from the cell, Appellant "[t]hrew something behind him and told [Anthony Maisey] to hold it." *Id.* Anthony Maisey testified the object landed right by him on the floor, so he picked it up. *Id.* He indicated the item was a "balled up glove[,]" which felt like it contained something. *Id.* He confirmed Officer Murchison took the glove from him when he searched him in the shower area of the RHU unit. *Id.* at 81.

Dennis Maisey, who admitted he has a lengthy criminal record, testified he was an inmate on the D. Block at the Columbia County Prison on December 24, 2017. *Id.* at 93. He indicated he knew Appellant, as well as Anthony Maisey, who is his cousin. *Id.* Dennis Maisey relevantly testified as follows:

[DISTRICT ATTORNEY]: At some pint that day did you visit [Appellant] while he was alone in his cell?

[DENNIS MAISEY]: Yes.

[DISTRICT ATTORNEY]: Once? Or more than once?

[DENNIS MAISEY]: Quite a few.

[DISRICT ATTORNEY]: When you visited [Appellant] at any time did you see him in possession of anything that was prohibited under Prison rules?

[DENNIS MAISEY]: Yes.

[DISTRICT ATTORNEY]: Was Anthony Maisey at some point placed into the same cell with [Appellant] later on that day?

[DENNIS MAISEY]: Yes.

[DISTRICT ATTORNEY]: Did you visit the two of them at their cell?

[DENNIS MAISEY]: Yes.

[DISTRICT ATTORNEY]: At any time on December 24 of 2017, did [Appellant] give you anything?

[DENNIS MAISEY]: Yes.

[DISTRICT ATTORNEY]: What did he give you?

[DENNIS MAISEY]: Gave me two substances, heroin and coke.

[DISTRICT ATTORNEY]: Now you wouldn't have had the facilities to test those inside the Prison. Did [Appellant] tell you that is what they were?

[DENNIS MAISEY]: Correct.

[DISTRICT ATTORNEY]: What did you do with them?

[DENNIS MAISEY]: Used them.

[DISTRICT ATTORNEY]: Did [Appellant] tell you how he got the heroin?

- 7 -

[DENNIS MAISEY]: Yes.

[DISTRICT ATTORNEY]: What did he tell you?

[DENNIS MAISEY]: Brought it in with him when he came in the Prison.

[DISTRICT ATTORNEY]: Did he tell you how he got it into the Prison?

[DENNIS MAISEY]: Yes.

[DISTRICT ATTORNEY]: What did he tell you?

[DENNIS MAISEY]: He snuck it in between his butt checks [*sic*] and then went in got in the shower, threw his C.O. off, went in and then threw it towards the shower area.

[DISTRICT ATTORNEY]: When did he tell you that?

[DENNIS MAISEY]: Just talking about it. Because we talked a lot of drugs.

[DISTRICT ATTORNEY]: He told you that that day?

[DENNIS MAISEY]: Yes.

*Id.* at 94-96.

Dennis Maisey testified that, later that day, he learned his cousin, Anthony Maisey, had been found in possession of heroin, so he stepped forward and told Lieutenant Seltzer that Appellant had given him heroin earlier in the day. *Id.* at 96.

Police Officer Quentin Reinford testified Corporal McCabe contacted him at approximately 6:00 p.m. on December 24, 2017, to report that contraband had been found on an inmate. *Id.* at 104-05. Officer Reinford traveled to the prison, where the corporal gave him "a knotted plastic bag, containing a knotted plastic bag, containing a chunky tan powdery substance." *Id.* at 105.

Further evaluation revealed the substance was heroin weighing 37.4 grams. *Id.* at 106.

At the conclusion of trial, the jury convicted Appellant of the offense indicated *supra*, and on August 21, 2019, the trial court sentenced Appellant to 30 months to 120 months in prison. Appellant filed a *pro se* notice of appeal; however, by order entered on March 23, 2020, this Court quashed Appellant's appeal on the basis it was untimely filed. Thereafter, Appellant filed a timely petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, seeking the reinstatement of his direct appeal rights *nunc pro tunc*, which the PCRA court granted on March 23, 2021. Appellant filed a counseled appeal on April 12, 2021. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Presented" (verbatim):

1. Whether the trial court committed error and abused its discretion when it allowed the District Attorney to narrate the video for the witness (Gerald Michael Vezendy) and the jury over the objection of trial counsel.

2. Whether the trial court committed error and abused its discretion when it overruled defense counsel's objection to the District Attorney's closing statement in which he tells the jury "Well who do we know that had brought in heroin? The Defendant."

3. Whether the trial court committed error and abused its discretion when it overruled defense counsel's objection to showing the video to the jurors during deliberations and permitting jurors to move closer to view the video.

4. Whether Defendant's conviction for possession of contraband was against the weight of the evidence presented by the Commonwealth.

5. Whether trial counsel was ineffective, thereby denying Defendant his constitutionally guaranteed right to effective representation.

Appellant's Brief at 4-5 (suggested answers omitted).

In his first issue, Appellant contends the trial court erred in permitting the District Attorney to narrate the video for the jury, as well as for a Commonwealth witness, Corrections Officer Vezendy. Specifically, Appellant contends the District Attorney committed misconduct when he narrated the video by directing the jury, and Officer Vezendy, to "watch Appellant's right arm," "watch Appellant's left arm," and watch "the flick of the wrist." N.T. 5/14/19, at 45. He contends "the manner of the District Attorney narrating and specifically telling the witness and the jurors *where* to look invades the jury's fact-finding province." Appellant's Brief at 11 (italics in original).

It is well-settled that:

[P]rosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Commonwealth v. Brown*, 134 A.3d 1097, 1106-07 (Pa.Super. 2016) (quotation omitted).

Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial. *Id.* A mistrial is "required only

- 10 -

when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Id.* at 1107 (quotation marks and quotation omitted). Moreover, a trial court may issue curative instructions to remove taint unless after a review of all the circumstances it determines that a curative instruction would be insufficient, warranting the extreme remedy of a mistrial. *Id.*

Here, in finding Appellant was not entitled to relief, the trial court indicated:

> Both counsel were permitted to point out whatever they found to be notable during the video, which was played several times [for the jury]. Trial counsel had no objection to the admission of the video, which showed, among other things, [Appellant] discarding an item from his hand into the shower. After defense counsel objected to the [District Attorney's narration] of what was on the video, the [trial] court issued a cautionary instruction to the jury to view the video and decide for themselves what they saw, noting that the [District Attorney] told the jury in his opening what to look for[.] This cautionary instruction was sufficient to allow the jury to be able to differentiate between the [District Attorney's] arguments and their role a[s] fact finders.

Trial Court Opinion, filed 4/15/21, at 1.

We agree with the trial court's sound reasoning and conclude Appellant is not entitled to relief on his first issue. *See generally Brown*, *supra*.

In his second issue, Appellant contends the trial court erred in overruling defense counsel's objection to the District Attorney's closing statement to the jury. We find this issue to be waived.

In his appellate brief, Appellant's entire argument with regard to this issue is as follows (verbatim):

> Appellant asserts that the District Attorney's comments in his closing statement, "[w]ell who do we know that had brought in the heroin? The Defendant[.]" (See N.T., 5/14/19, pg. 125, line 6) was impermissible as the statement sends a clear message to the jury that he (District Attorney) knows that Defendant brought heroin into the jail. This statement is extremely prejudicial as it is presented as fact. The credibility of the witnesses and whether or not the Appellant brought the contraband into the prison is exactly the question for the jury.

Appellant's Brief at 11.

It is well-settled that the "failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa.Super. 2007) (*en banc*) (citation, quotation marks, and brackets omitted).

> The Rules of Appellate Procedure [at Pa.R.A.P. 2119] state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.

*Commonwealth v. Martz*, 232 A.3d 801, 811 (Pa.Super. 2020) (quotation omitted).

Here, Appellant has failed to cite, discuss, or link the facts of his case to any applicable law. He has failed to develop his argument in any meaningful manner. Thus, we find his second issue to be waived. *See id.*

In his third issue, Appellant contends the trial court erred in showing the video to the jurors during deliberations and permitting jurors to move closer to view the video. We find this issue to be waived.

Initially, we note that, although Appellant presents five issues in his "Statement of Questions Presented," he presents only four separately headed parts in the Argument portion of his brief.[2] *See* Pa.R.A.P. 2119 ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part-in distinctive type or in type distinctively displayed-the particular point treated therein[.]"). Further, we have scoured the Argument portion of Appellant's brief and conclude Appellant has not developed an argument with regard to this issue. Thus, we decline to address it further.

In his next issue, Appellant contends the jury's verdict is against the weight of the evidence. Specifically, he contends his "conviction was contrary

---

[2] The first sub-heading of the Argument section indicates: "The trial court abused its discretion when it allowed the District Attorney to narrate the video for the witness and then permitted the jurors to move closer to view the video." Appellant's Brief at 8. However, while Appellant develops an argument related to the District Attorney's alleged narration of the video, he develops no argument regarding the propriety of jurors being permitted to move closer to view the video.

to the weight of the evidence because he was not credibly identified as possessing heroin and passing the heroin off to Anthony Maisey." Appellant's Brief at 14. In this regard, he contends he "was convicted based upon the incredible and inconsistent testimony of two inmates, [who] are cousins with lengthy criminal records [and] received favorable treatment for their testimony against Appellant."[3] *Id.*

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra*.

_____

[3] In order to preserve a weight claim, an appellant must raise the claim orally at any time before sentencing, by written motion at any time before sentencing, or in a post-sentence motion. *See* Pa.R.Crim.P. 607. Here, Appellant did not file a written motion raising a weight of the evidence claim. However, based on the record before us, we are unable to determine whether Appellant orally raised the claim during the sentencing hearing. Specifically, although Appellant requested the trial court transcribe and transmit the notes of testimony, the trial court failed to transmit the sentencing transcript to this Court. Under these circumstances, we decline to find waiver and will address the merits of Appellant's weight of the evidence claim.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the lower court; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.*

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (quotation marks and quotation omitted).

Here, in addressing Appellant's weight of the evidence claim, the trial court indicated the following:

> The jury were the fact finders. They were presented [with] evidence that [Appellant] was secreting something in his pants after he was arrested (Video #1, Ex. C-1) and evidence that he flipped an item into the shower when [the] guard was not looking (Video #2, Ex. C-2). They also were presented [with] evidence from [Anthony] Maisey who testified that [Appellant] had tossed the glove containing heroin on the prison floor. The jury saw fit to believe [Anthony] Maisey and find that the heroin taken from [Anthony] Maisey ultimately had come from [Appellant].

Trial Court Opinion, filed 4/15/21, at 2-3.

We find no abuse of discretion. *Talbert*, *supra*. We note the jury was free to determine the weight to be given to Anthony Maisey's testimony, as well as the testimony of Dennis Maisey. To the extent Appellant requests that we re-weigh the evidence and assess the credibility of the witnesses presented at trial, we decline to do so as it is a task that is beyond our scope of review. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact"). Accordingly, we find Appellant is not entitled to relief on his weight of the evidence claim.

In his final claim, Appellant contends trial counsel was ineffective. Specifically, he avers trial counsel was ineffective in stipulating to the fact that the substance found on Anthony Maisey was heroin. *See* Appellant's Brief at 15. For the reasons that follow, we defer Appellant's ineffective assistance of counsel claim to be raised in a petition under the PCRA.

Our Supreme Court has held that claims of ineffective assistance of counsel generally must await collateral review under the PCRA. *Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562 (2013); *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). The *Holmes* Court recognized two exceptions to the general rule whereby claims of ineffective assistance of counsel may be raised and addressed on direct appeal: (1) where the trial court determines that a claim of ineffectiveness is both meritorious and apparent from the record so that immediate

consideration and relief is warranted; or (2) where the trial court finds good cause for unitary review, and the defendant makes a knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA. ***Holmes***, ***supra***, 79 A.3d at 564, 577.

Here, Appellant has not met the aforementioned exceptions. Consequently, in light of ***Holmes***, we dismiss Appellant's claim of ineffective assistance of counsel without prejudice to his ability to raise the claim in a subsequent PCRA petition, if he so chooses.

For all of the aforementioned reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2021