J-A26029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH DEVINE | : | |
| | : | |
| Appellant | : | No. 716 EDA 2020 |

Appeal from the PCRA Order Entered January 21, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0014318-2007

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 30, 2021**

Keith Devine appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing, without a hearing, his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9641-9645.  After careful review, we affirm.

In 2009, Devine was convicted, following a bench trial, of third-degree murder,[1] criminal conspiracy[2] and aggravated assault.[3]  A prior panel of this Court recited the factual history of the case as follows:

> On Sunday, March 25, 2007, at about 4:37 p.m., police responded to a shooting at 5821 Pentridge Street and found four victims

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c).

[2] 18 Pa.C.S. § 903(a)(1).

[3] 18 Pa.C.S. § 2702(a).

suffering from gunshot wounds. One victim, Jovonne Stelly, was later pronounced dead from a gunshot wound to the face.

[On t]he day of the shootings, at about 3:30 p.m., [Devine] was standing outside his home at 58[XX] Pentridge St., [] a house he shared with his step-father, co-defendant Sam Scruggs[,] when a group of approximately 20 young men and wom[e]n, including a man named Eddie Tate, approached [Devine] from the street regarding a previous problem. [Devine] went into the house and the mob outside moved to the far end of the block[.] Shortly thereafter, a car pulled up to [Devine's] house and an unidentified man got out and distributed guns to individuals inside the house, including Scruggs, [Devine] and another man named Michael Wynn.

Now armed, [Devine] and company went back outside to confront the [] mob. Arguments flared, someone spit on someone else, and Scruggs pulled out his gun and knocked a member of the mob, [] Zarpele, to the ground. Eddie Tate went behind Scruggs[,] at which time, according to testimony, [Devine] began shooting. Gunfire ensued on both sides, including gun fire from further up the block where two additional co-defendants, Michael Stelly and Rashiek High, were located. The decedent, Jovonne Stelly, was the [sister] of Mr. Stelly and the wife of Mr. High. She was in the middle of the street, attempting to remove her sister from the crossfire when she was struck by a bullet.

A post-mortem examination of Jovonne Stelly was performed on March 26, 2007, where it was determined that the cause of death was a gunshot wound to the head/neck; the manner of death was homicide. Three other victims sustained gunshot injuries: Scruggs was shot in the chest, [] Kendall Sterns was shot in the arm[,] and [] Kalif Lee was shot in the leg. While there were numerous gunshot injuries, Ms. Stelly was the only fatality.

After the incident, [Devine] fled Philadelphia. For months[,] police attempted to locate [Devine] and he was finally apprehended in Williamsport, P[ennsylvania]. Upon being approached by an officer, [Devine] resisted arrest and moved his hand toward his waistband. The officer and [Devine] then engaged in a struggle over a gun [Devine] was carrying that culminated in [Devine's] arrest.

*Commonwealth v. Devine*, 3689 EDA 2015 (Pa. Super. filed Jan. 10, 2017)

(unpublished memorandum decision) (citation omitted).

In April 2009, Devine was tried jointly with four co-defendants, Michael Stelly, Michael Wynn, Samuel Scruggs, and Rashiek High, the Honorable Jeffrey P. Minehart presiding. Devine was found guilty of the above-mentioned offenses and sentenced on June 2, 2010, to concurrent sentences of imprisonment of 12½-25 years (third-degree murder), 10-20 years (aggravated assault), and two sentences of 10-20 years (conspiracy and aggravated assault) with credit for time served. Devine filed a post-sentence motion which the court denied. Devine filed a timely notice of appeal. Our Court affirmed Devine's judgment of sentence on August 5, 2011. ***Id.*** Devine's petition for allowance of appeal was denied by the Supreme Court on May 1, 2012. ***See*** Order Denying Petition for Allowance of Appeal, 5/1/12.

On June 6, 2012, Devine filed a timely *pro se* PCRA petition. On June 5, 2013, the court appointed Dennis I. Turner, Esquire, as Devine's PCRA counsel. Attorney Turner wrote a letter to Devine on July 5, 2013, informing him that he had been appointed as his PCRA counsel. In response, Devine sent counsel a series of letters—dated 7/11/13; 10/15/13; 11/6/13; 12/2/13; 1/19/14; and 1/25/14—flagging issues he wished to be included in an amended PCRA petition. In Devine's November 6, 2013 letter to Attorney Turner, Devine "asks [Attorney Turner] . . . [to] investigate a witness in [his] case name[d] Taniesha Scarvers[, . . . who] wishes to advise [him] of [] Homicide Detective James Pitts[,] who was an investigator [in his] case."

Letter, 11/6/13, at [1].[4]  In that same letter, Devine notes that Detective Pitts'

illegal practices in other cases "[are] of the same nature of the information

_____

[4] In the instant case, Scarvers gave two statements—one to Detective Pitts and one to Detective Henry Glenn.  In her first statement, given to Detective Glenn, Scarvers stated that when she arrived at Scruggs' house on the day of the shooting, she:

> went inside and saw Sam, [Devine], and Mir and they each had a gun.  I asked, what happened[,] and [Devine] said the boy that tried to rob him came around with about twenty ni*g#r$.  Then Sam said to Keith, I'm going to go outside and see if he wants to fight you one on one.  The[n,] Sam's friend[,] a Puerto Rican guy[,] came to the house and stayed by the door and he said to Sam[,] "do [you] want me to go out there and start shooing those ni*g#r$.["]  Then Sam said to the Puerto Rican guy that he is just going to go out there and see if the guy just wants to fight [Devine] one on one.  Then we all went outside and Sam went over to the guy and said to the boy do you all want to fight one on one[?]  Then they all started to argue and cursing and that's when Kaya and Donna started arguing and they both had th[eir] hands up like they were going to fight.  Then [K]aya looked at me and said are you going to jump in and I said no I'm not jumping in, it's a fair fight.  Then Donna['s] sister[, L]esha[,] tried to jump in and I grabbed [L]esha and I told her to let them rumble.  Then I turn[ed] around and I see Sam grab the young boy by his collar and he had the gun in the other hand and the guy was on his back.  The young boy was yelling ["don't sho[o]t me [O]ld [H]ead,"] and that's when I heard all these shots going off.  I jumped on the ground behind a car and I saw a girl[,] Piggy[,] laying on the ground[.]  Jeneya was in between me and Piggy.  Then Sam came over and he was saying[, "]I'm hit[,"] and he was yelling[, "]I'm down[,"] and he gave Jeneya the gun.  Then Sam told her to get all the guns out of the house.  I got closer to the house and I was yelling[, "]my uncle got shot.["]  I was on the top step and I ran in the house and I came back out and I saw Sam get in the back of the [p]olice car.  Then I went to go back in the house and they had locked the door and I couldn't get in the house.  Then [O]fficer Burks came and got me and brought me to the [p]olice station.

*(Footnote Continued Next Page)*

[that Tanisha Scarvers] has been trying hard to expose [in his case]." ***Id.*** at 1. Then, in his *pro se* "Petition for Remand" based on "After-Discovered/Newly[-]Discovered Evidence," Devine avers that unrelated claims made against Detective Pitts in a 2013 Philadelphia Daily News article[5] "echo[] those allegations made by . . . witnesses[, including Scarvers,] in [his] case."[6]

---

Statement by Shacrena Thomas (a/k/a Tanisha Scarvers), 3/25/07, at 1-2. Scarvers also noted in the statement that Devine is her cousin, that the other boys involved in the shooting had tried to rob Devine about one month prior to the incident, and that Devine possessed a black gun "with something red on it" during the incident. ***Id.*** at 2-3. In her statement to Detective Pitts the following day, Scarvers added the following information to her prior statement:

> I did forget one thing though. About five minutes before the shooting started[, Devine] was standing on the walkway in front of the door and this guy named Face came over and tried to say something to him. [Devine] grabbed at his back like he was going to pull out his gun and Face was like "Don't think that y[']all the only ones out here with burners." I could see the black part of [Devine's] gun but he didn't pull it all the way out then. I tried to calm Face down and then I noticed that Donna and Kaya were getting ready to fight and I went to deal with that like I said in my first interview.

Statement of Tanisha Scarvers, 3/26/07, at 2.

[5] On November 5, 2013, the Philadelphia Daily News published a lengthy article that revealed how three murder prosecutions handled by Detective Pitts had collapsed amidst accusations that he had coerced false statements from witnesses through threats and physical violence. http://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=5560 (last visited 7/7/21).

[6] Although Scarvers testified at Devine's co-defendant's preliminary hearing, she did not testify at Devine's preliminary hearing or at his trial. In fact, Scarvers was declared unavailable for trial. The trial judge made the following on-the-record statement regarding her unavailability:

*(Footnote Continued Next Page)*

*Pro Se* Petition for Remand and Hearing based on After-Discovered/Newly[-]

Discovered Evidence, undated,[7] at ¶¶ 3-4.[8]

_____

> Well, I think there has been a clear effort, it's discretionary with the [c]ourt[,] and it is clear that there has been exten[sive] effort to locate these witnesses. We heard from family members, we heard from members of the police department, we heard what they have done so far as the areas researched, the hospital, the Medical Examiner's [O]ffice, putting information on KYW radio[,] and putting out information in the Philadelphia Daily News.
>
> Based on the testimony I have heard, the Commonwealth has made sufficient efforts to bring these witnesses in, and it's clear from the testimony I heard that they are avoiding the efforts of the Commonwealth and, in fact, know that they have been called to testify and are unwilling to come in.

N.T. Waiver Trial, 4/27/09, at 36-37.

[7] Although not time-stamped by the clerk of courts, based on the docketing sheet this undated petition seems to have been submitted to the court somewhere between December of 2014 and February of 2015.

[8] While Scarvers' preliminary hearing testimony was incorporated into the record, the trial court specifically noted that her testimony would not be used against Devine at trial. The following discourse took place among trial counsel, the prosecutor, and the trial judge:

> Trial Counsel: I have something. Your Honor, the interesting question that's presented in my situation is at Keith Devine's [preliminary] hearing only two witnesses testified, Janeya -- Kendall Sterns and Leroy Brown. No argument as far as Leroy Brown, he testified live. But[,] as far as the other individuals who testified at the preliminary hearing for the co-defendants and did not testify at Keith Devine's hearing[,] I would certainly object to any of their testimony --
>
> Prosecutor: I agree.
>
> Trial Court: **That won't be used. That testimony will not be used against your client.**

*(Footnote Continued Next Page)*

Devine also sent several *pro se* letters and "applications" to the trial judge indicating his displeasure with appointed PCRA counsel's "non-compliance in communicating with [him]" and asking the court for permission to amend his pending *pro se* PCRA petition. **See** *Pro Se* Letters, 1/25/14; 11/10/14; 3/10/15; 7/30/15; 8/25/15; 9/3/15; 9/11/15; **see also** *Pro Se* Application for Permission to File Protective Amended PCRA Petition, 1/9/15. Devine's August 3, 2015 *pro se* letter to Judge Minehart reiterates that he has been "continuously diligent in every way . . . to engage [PCRA] counsel to communicate with [him] regarding [his] issues." *Pro Se* Letter, 8/3/15, at 1.

On August 29, 2015 and August 30, 2015, Attorney Turner filed a two-part "no-merit" letter with the PCRA judge seeking to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa.1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc). In the first part of the letter, counsel states that he has "reviewed the pleadings in [Devine's] *pro se* petitions for Post-Conviction Relief, the Quarter Session file, the waiver trial notes of testimony, [the] trial and Superior Court opinions[,] and [has] authorized [an] independent attempted interview of [a] witness via a private investigator, as well as researched the legal issues presented." **Finley** Letter, Part I, 8/29/15, at 1. Counsel concludes that "in his professional opinion[,]

---

N.T. Trial Testimony, 4/27/09, at 35 (emphasis added). **See Commonwealth v. Davis**, 421 A.2d 179, 183 n.6 (Pa. 1980) (judge, as fact finder, presumed to disregard inadmissible evidence and consider only competent evidence).

the claims [Devine] raises in his *pro se* PCRA petition lack merit, and further[,] after conscientious independent review and investigation, [he has] concluded that no meritorious claims exist that would support the filing of a counseled amended PCRA petition[.]" ***Id.*** Attorney Turner then lists and analyzes the eleven issues Devine raised in his *pro se* petition, including an after-discovered evidence claim. ***Id.*** at 2-3; ***id.***, Part II, 8/30/14, at 14 (Attorney Turner stating after-discovered evidence claim "**assert[s] that one of the investigating officers in [Devine's] case, Detective Pitts, allegedly had sexual relations with a witness in the case[,] Tenisha Scarvers[,] and further coerced her to give a statement**") (emphasis added). Attorney Turner then quotes Devine's allegation against Detective Pitts directly from Devine's amended *pro se* pleading, stating, in pertinent part, "Court-appointed counsel directed Private Investigator (PI), Ronald Felder[,] to interview Tanisha Scarvers. Tanisha Scarvers demonstrated an unwillingness to cooperate with PI Felder such that he was unable to obtain a statement from her corroborating petitioner's assertions. (***See*** Investigative Journal attached hereto and marked exhibit "A")." ***Id.***

On September 22, 2015, Devine filed a motion for counsel's withdrawal and requested to proceed *pro se* in the matter on the basis of PCRA counsel's "failure to file anything on the petitioner's behalf in the 18 months that he has been appointed counsel." *Pro Se* Letter, 8/3/15, at 2. On October 15, 2015,

Devine requested an extension to respond to counsel's *Finley* letter.[9] On October 27, 2015, the court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Devine's petition without a hearing, indicating that counsel had determined the issues raised in Devine's PCRA petition were without merit. On November 13, 2015, Devine filed a response to the PCRA court's Rule 907 notice and a "Motion in Opposition to Appointed PCRA Counsel['s] 'No Merit Letter,'" stating that counsel failed to comply with the requirements of *Anders* and *McClendon*,[10] and that the court should deny counsel's petition to withdraw. On December 1, 2015, the court dismissed Devine's petition, granted counsel's motion to withdraw, and advised Devine that he may proceed *pro se* or with retained counsel and that "no new counsel is to be appointed." Order, 12/1/15, at 1 n.1.

Devine timely filed a *pro se* collateral appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[11] On January 10, 2017, our Court affirmed the trial court's PCRA order, relying upon

_____

[9] In this request, Devine indicated that he received counsel's *Finley* letter on September 22, 2015.

[10] Devine incorrectly cites to *Anders v. California*, 386 U.S. 738 (1967) and *Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981), cases that set forth the proper procedure for counsel to withdraw from a direct appeal, not a collateral appeal under the PCRA.

[11] In his Rule 1925(b) statement, Devine does not raise the issue of counsel's ineffectiveness for failing to file an amended petition raising the instant claim regarding Detective Pitts' coercive and improper interview tactics with regard to witnesses in his case. Thus, even if Devine had overcome the PCRA's jurisdictional hurdle in the instant collateral appeal, we could also find the claim waived. *See* 42 Pa.C.S. § 9544(b).

Judge Minehart's "comprehensive" and "well-reasoned" opinion. *Commonwealth v. Devine*, 3689 EDA 2015 (Pa. Super. filed Jan. 10, 2017) (unpublished memorandum decision). Devine filed an unsuccessful petition for allowance of appeal with the Pennsylvania Supreme Court. *See* Order Denying Petition for Allowance of Appeal, 10/12/17.

On December 11, 2017, Devine filed the instant PCRA petition, his second, which was later amended in June of 2018, February of 2019, and September of 2019, by retained counsel, Teri B. Himebaugh, Esquire.[12] In a June 17, 2018 supplement to his amended PCRA petition, Devine alleged that there was newly-discovered evidence to support his PCRA claim that Detective Pitts,[13] who was the lead investigator in his case, "had an unconstitutional 'pattern and practice' of fabricating evidence and suborning perjury in order to inculpate a pre-ordained suspect." Supplement to Amended Motion for Post Conviction Relief, 6/17/18, at 1. Devine attached to this supplemental petition the affidavits from three individuals to support his claim about Detective Pitts.

_____

[12] On March 24, 2020, Attorney Himebaugh withdrew from the case after filing a notice of appeal from the trial court's order denying the instant PCRA petition. On April 20, 2020, private counsel, Todd Michael Mosser, Esquire, entered his appearance for Devine. Despite this appearance by private counsel, on May 18, 2020, Judge Minehart appointed Attorney Stephen T. O'Hanlon, Esquire, as counsel for Devine. To rectify the confusion regarding representation in this collateral appeal, this Court granted Attorney O'Hanlon's motion to withdraw, struck his appellate brief, and remanded the matter for the preparation of an appellate brief by Attorney Mosser. *See Commonwealth v. Devine*, 716 EDA 2020 (Pa. Super. filed Oct. 13, 2020) (order).

[13] *See supra*, at 5 n.5.

The affiants, Cornell Drummond, Keisha Jones, and Tyree Thomas, indicated that they perjured themselves in 2009 and 2011 by providing fabricated evidence in multiple state and federal cases at the compulsion of authorities, including Detective Pitts. **See id.** at 2-7. **See also** Petitioner's Motion to Supplement Record, 2/19/19 (attaching statements from 12 individuals averring that in unrelated cases they were interviewed by same homicide detectives in Devine's case and that these detectives employed unconstitutional patterns of abusive practices).

On November 8, 2019, the Commonwealth filed a response to Devine's serial PCRA petition. On December 19, 2019, the PCRA court issued Rule 907 notice of its intent to dismiss Devine's petition within 20 days, without a hearing, finding that the "issues raised in the original and amended Post Conviction Relief Act petition are without merit." Rule 907 Notice, 12/19/19, at 1. Devine did not file a response.[14] On January 21, 2020, the court dismissed Devine's petition.

_____

[14] Devine filed with the court a copy of a *pro se* letter to Todd Michael Mosser, Esquire, who entered his appearance for Devine after Attorney Himebaugh withdrew, noting that Attorney Himebaugh had agreed to file a response to the court's Rule 907 notice. However, "once the Commonwealth did respond [to his PCRA petition, Attorney] Himebaugh never filed []or replied to the Commonwealth [and] basically abandoned [Devine] at that time [and,] ultimately[, Devine's] PCRA [petition] was dismissed[.]" *Pro Se* Letter, 2/14/20.

Devine filed a timely notice of appeal and court-ordered Rule 1925(b) statement.[15] On appeal, Devine raises one issue for our consideration: "Did the PCRA court err by dismissing [Devine]'s [s]econd [a]mended PCRA petition without a hearing[,] where he adequately pleaded the newly[-]discovered evidence exception to the time bar?" Appellant's Brief, at 2.

We review an order denying collateral relief under the PCRA to determine whether evidence of record supports the findings of the PCRA court and whether its legal conclusions are free from error. **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Id.** (quoting **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013)). Here, where the court dismissed Devine's petition without a hearing, we note that there is no absolute right to an evidentiary hearing on one's PCRA petition. **See Commonwealth v. Springer**, 961 A.2d 1262, 1264 (Pa. Super. 2008); Pa.R.Crim.P. 907. On appeal, we examine the issues raised in light of the record "to determine whether the PCRA court erred in concluding

---

[15] On May 18, 2021, Devine filed a *pro se* letter, pursuant to **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011), asking this Court to amend counsel's appellate brief "to include certain facts that will directly disprove the court['s] ruling that is being appealed." **Jette** Letter, 5/18/21, at 1. As per the directive of our Supreme Court in **Jette**, our Court forwarded that letter and its attachments to Attorney Mosser. **See Jette**, **supra** at 1044 ("the proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion").

there were no genuine issues of material fact and in denying relief without an evidentiary hearing." ***Id.***

The PCRA requires a petition, including a second or subsequent petition, to be filed within one year of the date the underlying judgment becomes final, ***see*** 42 Pa.C.S. § 9545(b)(1), unless the petitioner alleges, and proves, that an exception to the time for filing the petition, set forth at subsections 9545(b)(1)(i), (ii), and (iii), is met.[16] Additionally, a PCRA petitioner invoking one of these statutory exceptions must file his petition "within sixty days of the date the claim could have been presented. ***See id.*** at § 9545(b)(2).[17]

---

[16] The PCRA's timeliness exceptions are:

(i)    the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)   the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)  the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. §§ 9545(b)(1)(i)-(iii).

[17] Section 9545(b)(2) was amended, effective December 24, 2018, to extend the sixty-day limitation to a period of one year for claims arising on or after December 24, 2017. Because Devine's claims regarding Detective Pitts arose prior to December 24, 2017, the former section 9545(b)(2) sixty-day window applies.

- 13 -

Under the PCRA, a judgment of sentence is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." *Id.* at § 9545(b)(5).

In the instant case, Devine's judgment of sentence became final on August 1, 2012, when the time expired for him to file a petition for certiorari with the United States Supreme Court. *See* Sup. Ct. R. 13 (90 days within which to file petition for certiorari with United States Supreme Court from denial of Pennsylvania Supreme Court's petition for allowance of appeal). Since Devine filed the instant PCRA petition, his second, on December 11, 2017, his petition is patently untimely. Thus, he must plead and prove one of the PCRA timeliness exceptions to obtain merits review of his petition.

Instantly, Devine alleges that a "newly-discovered fact," under section 9545(b)(1)(ii) of the PCRA, saves his untimely petition from the PCRA's well-established filing deadline. Section 9545(b)(1)(ii) requires a petitioner to demonstrate that he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. *Commonwealth v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007). The focus of the exception is "on [the] newly[-]discovered facts, not on a newly[-]discovered or newly[-]willing source for previously known facts." *Commonwealth v. Johnson*, 863 A.3d 423, 427 (Pa. 2004). Moreover, due diligence demands that the petitioner take reasonable steps to protect his own interests; a petitioner must explain why he could not have learned the new

facts earlier with the exercise of due diligence. ***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015). However, the newly-discovered facts exception does not require "perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances[,] to uncover facts that may support a claim for collateral relief." ***Commonwealth v. Brensinger***, 218 A.3d 440, 449 (Pa. Super. 2019) (citation omitted).

In his PCRA petition, Devine alleges that "the instant new evidence was discovered while [his] appeal from his first timely PCRA was still pending in the Pennsylvania Superior and/or Supreme Court. Therefore, pursuant to ***Commonwealth v. Lark***, [] 746 A.2d 585 ([Pa.] 2000)[, Devine] was precluded from [including] this new evidence [in another] PCRA petition while [he] had another appeal still pending in another court." PCRA Petition, 12/11/17, at 4. Thus, he claims that the petition alleging these new facts was filed within 60 days of the denial of his petition for allowance of appeal by the Pennsylvania Supreme Court, as well as the decision, ***Commonwealth v. Thorpe***, CP-51-CR-0011433-2008 (Phila. Cty. filed Nov. 3, 2017),[18] "which is

_____

[18] In ***Thorpe***, ***supra***, the Honorable Teresa Sarmina conducted an *in camera* review of more than 17 internal affairs complaints against Detective Pitts. On November 3, 2017, after four days of hearings, Judge Sarmina found that Detective Pitts had an unconstitutional "pattern and practice" of holding suspects and witnesses in isolation for prolonged periods of time in order to interrogate them, coerce false statements, and physically and psychologically threaten and abuse suspects and witnesses in order to inculpate a pre-ordained suspect.

the basis for the new pattern, practice[,] and custom claim asserted herein."

*Id.*

Here, Devine learned of the "newly-discovered" facts regarding Detective Pitts' coercive behavior involving witness Scarver in 2013, while his first PCRA was pending. Devine asserts that under *Lark*, he was unable to file a new petition raising the claim until his first petition was resolved. *See Lark*, *supra* (holding that when PCRA appeal is pending, subsequent PCRA petition cannot be filed until resolution of review of pending PCRA petition by highest state court in which review is sought, or at expiration of time for seeking such review). However, in *Commonwealth v. Montgomery*, 181 A.3d 359 (Pa. Super. 2018) (en banc), our full Court held that a PCRA court has jurisdiction to consider a subsequently filed PCRA petition when a prior petition is pending, as long as the prior petition was not yet under appellate review. *Id.* at 364. *See Commonwealth v. Chimenti*, 218 A.3d 963, 973 n.11 (Pa. Super. 2019) (reaffirming *Montgomery*'s holding that PCRA court not jurisdictionally barred from considering serial PCRA petitions, provided no pending appeal of prior PCRA petition).

Here, Devine's first PCRA petition was ultimately dismissed by the PCRA court on December 1, 2015, his collateral appeal was resolved by this Court on January 10, 2017, and the Pennsylvania Supreme Court denied Devine's petition for allowance of appeal on October 12, 2017. Devine became aware of the "new facts"—specifically, "the pattern, practice[,] and custom and

Scarver admissions"—in 2013,[19] while his petition was still pending before the PCRA court and well before it was under appellate review. Thus, Devine's first petition was not final at the time he learned of the facts and he could have filed another petition. **Montgomery**, **supra**. Because Devine could have filed a petition while his second petition was pending, his current petition was not filed within 60 days of the date the claim could have first been presented. **See id.** at § 9545(b)(2).

However, even if the 60-day deadline under section 9545(b)(2) had been met, we would still conclude that his claim fails to prove the newly-discovered facts exception because the "facts" he asserts are not "new." Devine's July 11, 2013 letter to Attorney Turner mentions the need to investigate whether Scarvers' testimony in his case had been coerced by Detective Pitts. Thereafter, Devine references the potentially-coerced statement in several letters to counsel and the PCRA court prior to the dismissal of the petition. Thus, while Scarvers' *willingness to testify*[20] is new,

---

[19] PCRA Petition, 12/112/17, at 6. Specifically, Devine was aware of the November 2013 <u>Philadelphia Daily News</u> article that details Detective Pitts' practice of coercing false statements from witnesses through threats and physical violence. Moreover, Devine acknowledged that unrelated claims made against Detective Pitts in the 2013 <u>Philadelphia Daily News</u> article "echoed those allegations made by . . . witnesses[, including Scarvers,] in [his] case." *Pro Se* Petition for Remand and Hearing based on After-Discovered/Newly[-]Discovered Evidence, undated, at ¶¶ 3-4.

[20] In his latest PCRA petition, Devine claims that witness Scarvers has now "agreed to speak to and give [Attorney] Himebaugh's investigator a statement [because she] is no longer in a relationship with Det[ective] Pitts[,] and[,] while she is still afraid of him, she is now willing to come to court to testify if

*(Footnote Continued Next Page)*

- 17 -

the facts are not new.  ***See Johnson***, ***supra***; ***Commonwealth v. Burton***, 158 A.3d 618, 629 (Pa. 2017) (same).[21]

Moreover, Devine fails to prove how the information alleged in the three affidavits regarding Detective Pitts' misconduct supports his petition or how he could not have ascertained the information earlier with the exercise of due diligence.[22]  ***Brown***, ***supra***.  Specifically, with regard to these particular affiants, Devine can point to no testimony, physical evidence, documentation, or other type of evidence to support his claim that there was misconduct by the detectives in *his* case.  ***Commonwealth v. Brown***, 134 A.3d 1097, 1109 (Pa. Super. 2016) (holding new trial not warranted where evidence offered against Detective Pitts was not specific to case at bar).  Rather, we are left to speculate what evidence in the affidavits supports his newly-discovered facts

---

asked."  PCRA Petition, 12/11/17, at 9.  Specifically, Devine now references an alleged sexual affair between Detective Pitts and Scarvers that commenced while his case was pending.  ***Id.*** at 20-22.

[21] Following Attorney Turner's withdrawal from representing Devine, Attorney Himebaugh was appointed to represent Devine in October of 2018.  During that three-year period, it is unclear whether Devine proceeded *pro se* or was represented by counsel intermittently.  However, his current petition seems to suggest that he also asked other attorneys to obtain a statement from Scarvers regarding Detective Pitts' coercive investigative techniques.  ***See*** Amended PCRA Petition, 12/11/17, at 9 (PCRA counsel reiterates "Scarvers continued to reject other efforts [Devine] and his counsel made over the years to obtain a sworn statement from her").

[22] In fact, Devine admits that he had read the Philadelphia Daily News article well before filing his PCRA petition, but because he was impoverished, he did not have the ability to pay for an "in depth extra-record" investigation that would be necessary to uncover Detective Pitts' unconstitutional behavior. PCRA Petition, 12/11/17, at 7.

exception. In addition, Devine's reliance upon the November 5, 2013 Philadelphia Daily News article detailing Detective Pitts' abusive behavior toward witnesses in an unrelated case is not considered a "new fact" to support the PCRA's section 9545(b)(ii) exception. *See Commonwealth v. Castro*, 93 A.3d 818 (Pa. 2014) (explaining newspaper articles containing allegations that suggest evidence might exist, do not amount to anything more than allegations in any other out-of-court situation; thus, newspaper articles generally constitute inadmissible hearsay and cannot, without more, satisfy the newly-discovered fact exception).[23] Similarly, Devine's reliance upon *Thorpe* is to no avail. *See Commonwealth v. Watts*, 23 A.3d 980 (Pa. 2011) (judicial decisions are not "facts" that invoke section 9545(b)(1)(ii) exception to PCRA).[24]

---

[23] Likewise, evidence from the *Thorpe* hearing is not evidence of Detective Pitts' misconduct in the instant case and, therefore, does not provide a factual basis for any claim Devine could make. *Brown*, *supra*.

[24] We recognize that even if we reached the substantive merits of an after-discovered evidence claim, *see Commonwealth v. Bennett*, 930 A.2d 1264, 1271 (Pa. 2007) (clarifying section 9454(b)(1)(ii)'s exception does not require any merits analysis of underlying claim, and explaining distinction between newly-discovered facts exception and after-discovered evidence claim), we would agree with the PCRA court that Devine is not entitled to relief, where none of the alleged witnesses interviewed by Detective Pitts testified against Devine and where their preliminary hearing testimony was not considered by the court in Devine's case. Moreover, there was overwhelming inculpatory evidence implicating Devine in the shooting—specifically eyewitnesses, Leroy Brown, Kaya Shapiro, and surviving victim, Kendall Sterns. *See* Rule 1925(a) Opinion, 2/24/20, at 6 (stating evidence pertaining to three alleged witnesses and other evidence involving Detective Pitts would not have resulted in different outcome upon retrial because Devine's convictions did not rest in any way on Detective Pitts' involvement in matter).

Because the record reflects that Devine was aware of Scarvers' proposed testimony regarding Pitts' improper interview tactics as far back as 2013, Devine has failed to prove the newly-discovered facts exception to the PCRA. At most, Devine's claim amounts to "[a] newly[-]willing source for previously known facts." **Johnson**, **supra** at 427. Accordingly, the PCRA court lacked jurisdiction to consider the merits of Devine's petition. Thus, the court's decision to dismiss Devine's petition without a hearing is supported by the record and free of legal error. **Smith**, **supra**.

Order affirmed. [25]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2021

---

[25] Devine also alleges that his claim falls within the governmental interference exception under section 9545(b)(1)(i) of the PCRA, where "his inability to previously discover the new evidence and raise the instant claims were the result of interference by governmental [officials because] Det[ective] Pitts covered up his pattern and practice of abuse by lying year after year, in case after case." **Id.** at 5. For the same reason we find no merit to Devine's newly-discovered facts exception, we also conclude he has not proven the governmental interference exception where the facts on which the claim is raised were raised in his first petition. Under such circumstances he was not precluded, because of government interference, from raising the claim earlier. **See** 42 Pa.C.S. § 9545(b)(1)(i) (petitioner satisfies governmental interference exception when "the failure to raise the claim *previously* was the result of interference by government officials") (emphasis added).