J-S38032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES WHEELER | : | |
| | : | |
| Appellant | : | No. 91 EDA 2024 |

Appeal from the PCRA Order Entered November 29, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010895-2015

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JANUARY 15, 2026**

Appellant, Charles Wheeler, appeals from the post-conviction court's order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The PCRA court summarized the facts and procedural history of Appellant's case, as follows:

> Appellant was a drug dealer in North Philadelphia who worked for a man named "AJ[."] Raphael Cruz and eyewitness/surviving-victim Gabriel Ortega were rival drug dealers in the same neighborhood. On the afternoon of September 23rd, 2014, Decedent got into an argument with AJ over who could sell drugs on Mascher Street. During this argument, AJ and another man had guns concealed in their hoodies. The argument then escalated into a screaming match, and both groups threatened each other. Ramon Vera, Decedent's older brother, convinced Decedent to leave. Later, that evening, AJ and Decedent were involved in a shootout, during which ten to twenty shots were fired. The following day, Decedent picked up the surviving victim, … Ortega, in his Ford Taurus. … Ortega got into the car; Decedent handed him a gun. About ten minutes later, at around 1:00 p.m.,

Decedent and … Ortega were driving down Cambria Street.  As they did so, Appellant got out of [a] car, approached the Ford Taurus from the rear, and opened fire.  … Ortega ducked down and put his arm up to shield himself.  He suffered gunshot wounds to his back and his left arm.  … [D]ecedent was shot in the chest.  The bullet penetrated Decedent's heart and lungs, killing him.  Decedent's car continued moving down the street and crashed, striking and injuring a bicyclist.  A crowd of forty to fifty people gathered around Decedent's car, and some of the bystanders attempted to give him aid.  … Ortega took the gun that Decedent had given him earlier and fled.  He stopped and hid the gun under a traffic cone several blocks away.  A short time later, … Ortega collapsed.  A police officer picked him up and drove him to Temple Hospital.  On September 25th, 2014, after he was released from the hospital, … Ortega provided a statement to Homicide Detectives Derrick Venson and Patrick Whalen, in which he identified Appellant as the murderer by name and in a photo array presented by assigned Detective Laura Hammond.  Rather than returning to his neighborhood, … Ortega stayed in another area of the city.  On May 6th, 2015, … Ortega returned to the Homicide Unit and provided a video-recorded statement to Detectives Gregory Singleton and Thorsten Lucke.  In the video-recorded statement, he again identified Appellant as the shooter.  … Ortega's identification served as the only direct evidence presented at trial linking Appellant to the instant shooting.  During the preliminary hearing, … Ortega testified that he provided his May 6th, 2015[] video-recorded statement because he did[ not] want to face charges for firearm possession after being arrested while on probation.  Furthermore, … Ortega testified that an unidentified detective promised him a $20,000.00 reward but did not elaborate further regarding the identity of this detective.  Detectives … Venson and … Singleton each testified that neither of them offered … Ortega a $20,000.00 reward in exchange for Appellant's identification.  Detective … Hammond testified that … Ortega never contacted her about collecting any reward money.[1]

[1] On cross-examination, Detective … Venson testified that[,] although [it was] common knowledge that the City of Philadelphia [had at one time] offered $20,000.00 for information leading to a homicide arrest and conviction, the City of Philadelphia never paid those rewards.

***

- 2 -

On October 28th, 2015, … Ortega denied his identification of Appellant as the shooter, as recorded in his September 25th, 2014[] statement. During a jury trial before the Honorable Diana L. Anhalt, … Ortega again recanted his statement.[3]

> [3] [Ortega] testified that he did not see the shooter. Furthermore, [Ortega] stated that prior to providing his statement, one or two white male detectives, other than Detective Venson, offered him [a] $20,000.00 reward in exchange for identifying Appellant. [Ortega] claimed he never received payment and did not mention any reward money when he provided his second statement to Detective … Singleton and [Detective] Lucke. *See*[] N.T. [Trial], 01/04/2017[,] at [] 40-45, 103; N.T. [Trial], 01/05/2017[,] at [] 31-32, 194.

On January 9th, 2017, the jury convicted Appellant of first-degree murder [(18 Pa.C.S. § 2502(a)), carrying a firearm without a license] ([18 Pa.C.S. §] 6106), [carrying a firearm in public in Philadelphia] ([18 Pa.C.S. §] 6108), and [possessing an instrument of crime (PIC) (18 Pa.C.S. § 907(a)).] … [T]he [trial court] imposed a mandatory sentence of life imprisonment[,] plus … 3½ to 7 years[' imprisonment] for [carrying a firearm without a license]. On January 16th, 2017, Appellant filed a timely post-sentence motion by and through James F. Berardinelli, Esquire. On May 17th, 2017, the post-sentence motion was denied by operation [of] law. On June 12th, 2017, Appellant, by and through counsel, filed a timely notice of appeal. The Superior Court of Pennsylvania affirmed Appellant's judgment of sentence in a decision without a published opinion.[4] [**See Commonwealth v. Wheeler**, 217 A.3d 446 (Pa. Super. 2019) (unpublished memorandum).] Appellant did not file a [petition for permission to appeal] with the Supreme Court of Pennsylvania.

> [4] The judgment of sentence became final on June 30th, 2019.

On June 4th, 2019, Appellant filed a timely[,] *pro se* PCRA petition. [Counsel was appointed and, o]n June 21st, 2020, … an amended PCRA petition [was filed on Appellant's behalf,] averring that [Appellant] is entitled to an evidentiary hearing or a new trial on the grounds [of] after-discovered evidence in the form of ex-detective Philip Nordo's misconduct…. On April 11th, 2023, an evidentiary hearing was held. On August 3rd, 2023, this court denied Appellant's PCRA petition.

PCRA Court Opinion (PCO), 4/4/25, at 1-3 (unnecessary capitalization and some footnotes omitted; formatting altered).

Appellant did not file an appeal from the court's August 3, 2023 order denying his petition. However, the court's order did not properly notify him of his right to appeal from that order, as required by Pennsylvania Rule of Criminal Procedure 908(E). *See* Pa.R.Crim.P. 908 ("If the case is taken under advisement, or when the defendant is not present in open court, the judge, by certified mail, return receipt requested, shall advise the defendant of the right to appeal from the final order disposing of the petition and of the time limits within which the appeal must be filed."). This Court has found that this type of error constitutes a breakdown in the operations of the court. ***See Commonwealth v. Meehan***, 628 A.2d 1151, 1155 (Pa. Super. 1993).

Then, for some unknown reason, on October 27, 2023, the PCRA court issued a Pa.R.Crim.P. 907 notice, stating that it intended to dismiss Appellant's petition without a hearing (despite that a hearing had already occurred), and explaining its basis for that decision. ***See*** Rule 907 Notice, 10/27/23, at 1-2 (unnumbered). Although he was still represented by counsel, Appellant filed a *pro se* response on November 21, 2023. On November 29, 2023, the PCRA court issued an order dismissing his petition. Again, that order failed to notify

Appellant of his right to appeal; nevertheless, Appellant filed a timely notice of appeal on December 26, 2023.[1]

While Appellant's appeal was pending, he filed two *pro se* motions with this Court indicating that he desired either new counsel, or wished to proceed *pro se*, so that he could challenge, on appeal, the effectiveness of his PCRA attorney, James Lloyd, Esq. Accordingly, this Court issued an order on April 15, 2024, remanding Appellant's case for the PCRA court to either appoint new counsel, or conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), to determine whether Appellant was knowingly, intelligently, and voluntarily waiving his right to counsel and proceeding *pro se*. A **Grazier** hearing was held on July 30, 2024, after which new counsel was appointed for Appellant.

Appellant thereafter filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the PCRA court issued a responsive Rule 1925(a) opinion. Herein, Appellant states two issues for our review:

> 1. Did the PCRA court err[,] and was dismissal of Appellant's PCRA petition without a hearing not supported by the record and free from legal error[,] because … Nordo played a significant role in the investigation of Appellant's case?
>
> 2. Did the PCRA court err[,] and was dismissal of Appellant's PCRA petition not supported by the record and free from legal error[,] because PCRA counsel was ineffective in a layered context for

---

[1] Given this record, and considering that the court's initial order entered on August 3, 2023 constitutes a breakdown in the operations of the court, we deem the November 29, 2023 order, from which Appellant has timely appealed, as the final order dismissing his petition.

failing to raise a **Brady** discovery violation issue in his amended PCRA petition?

Appellant's Brief at 4 (unnecessary capitalization omitted).

To begin, we note that:

"In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error." **Commonwealth v. Johnson**, … 966 A.2d 523, 532 ([Pa.] 2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." **Id.**

**Commonwealth v. Matias**, 63 A.3d 807, 810 (Pa. Super. 2013).

Here, Appellant first claims that the PCRA court erred by denying his petition, wherein he alleged that he discovered new evidence that Nordo had bribed Ortega to falsely accuse Appellant of shooting him. Appellant claims that he presented sufficient evidence to establish that Nordo bribed Ortega. Specifically, Appellant insists that he demonstrated Nordo had a "habitual practice of bribing witness[es]" by setting forth six other, unrelated criminal cases in which the defendants' "convictions [were] vacated and their cases discharged because of Nordo's misconduct." Appellant's Brief at 15-16. Although in this case, Ortega did not specifically name Nordo as the detective who bribed him, Appellant contends that "[i]t could have only been … Nordo[,] given the limited number of task force detectives." **Id.** at 17. He also stresses that he presented "police activity sheets from May 6, 2015[, which] showed that Ortega was transported to the Police Administration Building by Nordo" and other detectives. **Id.** (unnecessary capitalization omitted). Accordingly,

Appellant insists that he presented sufficient evidence to demonstrate that his case "should be remanded for a new trial." *Id.*

We disagree. We have explained that,

> [t]o be entitled to relief under the PCRA on [the] basis [of after-discovered evidence], the petitioner must plead and prove by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.[] § 9543(a)(2)(vi). As our Supreme Court has summarized:
>
>> To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.
>
> *Commonwealth v. Pagan*, … 950 A.2d 270, 292 ([Pa.] 2008) (citations omitted). "The test is conjunctive; the [appellant] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010) (citation omitted). Further, when reviewing the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case. *Commonwealth v. Reese*, … 663 A.2d 206 ([Pa. Super.] 1995).

*Commonwealth v. Foreman*, 55 A.3d 532, 537 (Pa. Super. 2012).

Instantly, in concluding that Appellant's "new evidence" regarding Nordo's misconduct in other, unrelated cases did not meet the after-discovered-evidence test, the PCRA court initially found that "Appellant fail[ed] to present evidence or argument demonstrating that … Nordo played

a significant role in the investigation or in obtaining … Ortega's statement."

PCO at 4. The court then continued:

On January 4th, 2017, … Ortega appeared before the jury that convicted Appellant and testified that he never saw the person who shot him and Decedent. Recanting his prior accusation, … Ortega testified that he only identified Appellant as the shooter because an unidentified police detective offered him a $20,000.00 reward in exchange for providing a statement. At trial, the prosecutor impeached … Ortega by presenting both his September 25th, 2014[] statement[,] and May 6th, 2015[] video-recorded statement, where he identified [Appellant]. Appellant fails to demonstrate that evidence of … Nordo's misconduct in unrelated matters is relevant to the instant case. Nor does he corroborate his supposition that … Nordo was the one who allegedly offered … Ortega a reward for his statement. Ortega never identified the detective who offered him reward money, instead claiming that it was one or two white male detectives who spoke to him before giving his witness statement:

[The Prosecutor:] So then I assume, correct me if I'm wrong, Detective Venson would be one of the individuals you're speaking with [who was] trying to bribe you?

[Ortega:] He wasn't the one -- it was a white male, it was two white males. I got questioned four different times when I went to Homicide.

[The Prosecutor:] Okay. And you don't remember any of their names?

[Ortega:] No, I do not.

[N.T. Trial, 1/4/17, at 123-24.]

To date, … Ortega has not provided, and Appellant has not submitted[,] an affidavit identifying … Nordo as the detective who allegedly promised to secure reward money. Appellant simply cites … Nordo's 2014-2015 assignment to the homicide "Task Force," a unit of seven detectives responsible for long-term investigations. … Nordo's assignment to the task force is insufficient to permit an inference that he was present for either the September 25th, 2014 or the May 6th, 2015 interviews, let alone that he promised … Ortega a reward. Appellant has not

- 8 -

presented any evidence indicating that Nordo played a larger role in the investigation leading to Appellant's conviction. In the absence of any evidence that … Nordo ever interacted with [Ortega], Appellant fails to meet his burden in demonstrating that … Nordo's unrelated misconduct entitles him to a new trial.

PCO at 4-5 (footnoted citations to the record and unnecessary capitalization omitted).

We discern no abuse of discretion in the PCRA court's decision. In support, we rely on **Commonwealth v. Brown**, 134 A.3d 1097 (Pa. Super. 2016). There, this Court rejected Brown's claim that he deserved an after-discovered-evidence hearing based on two newspaper articles discussing the misconduct of former Philadelphia Police Detectives Ronald Dove and James Pitts in unrelated cases. **Id.** at 1108. Dove and Pitts had both been **directly involved** in Brown's case, taking statements from Brown and another witness, who later recanted that statement. **Id.** Despite this direct involvement, we concluded that Brown was not entitled to an evidentiary hearing to explore whether the detectives had committed misconduct in his case. **Id.** at 1108-09. We reasoned that, with respect to Dove, Brown had relied only "on [a] newspaper article reporting on Dove's possible misconduct" in an unrelated case, and he did "not articulate what evidence he would present at the evidentiary hearing on remand." **Id.** at 1109. Pertaining to Pitts, Brown only specified witnesses that he would call to testify about Pitts' improper interrogation techniques in other cases. **Id.** We concluded that, absent proof that Pitts had committed misconduct in Brown's case, the evidence of his improper interrogation tactics from other cases could only be used by Brown

to attack Pitts' credibility, which cannot satisfy the after-discovered-evidence test. *Id.* Therefore, because "an evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim," we held that Brown had not demonstrated that a hearing was warranted. *Id.*

In this case, unlike in **Brown**, Appellant **had an evidentiary hearing**, yet he failed to present any evidence that Nordo was the detective who bribed Ortega. Notably, at the hearing, Appellant's counsel informed the court that he had spoken to Ortega, and Ortega was "not willing to appear. He [was] not willing to assist the defense in this petition." N.T. PCRA Hearing, 4/11/23, at 4. Moreover, Appellant also failed to present any evidence that Nordo was directly involved in his case at all, or that Nordo had any significant interaction with Ortega.

Although Appellant now contends that "police activity sheets" show that Nordo was one of several detectives who transported Ortega to his statement on May 6, 2015, this document was not attached to Appellant's PCRA petition. It also was not entered into evidence — or even mentioned — at the PCRA hearing. Instead, from our review of the record, it appears that the police activity sheet was only presented to the PCRA court as an attachment to Appellant's *pro se* response to the court's Rule 907 notice. Given that Appellant was still represented by counsel at that time, his filing a *pro se* response constituted impermissible hybrid representation. **See Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016) ("In this

Commonwealth, hybrid representation is not permitted.") (citing

***Commonwealth v. Jette***, 23 A.3d 1032, 1036 (Pa. 2011) (concluding that a

petitioner's *pro se* motion for remand when that petitioner is represented by

counsel is impermissible as hybrid representation)).  We have stated that "*pro*

*se* motions have no legal effect and, therefore, are legal nullities." ***Id.*** (citing

***Commonwealth v. Nischan***, 928 A.2d 349, 355 (Pa. Super. 2007)

(discussing a *pro se* post-sentence motion filed by a petitioner who had

counsel)).  Accordingly, Appellant's *pro se* response to the Rule 907 notice

which included, for the first time, the police activity sheet, was a legal nullity,

and that document could not be properly considered by the PCRA court.[2]

Nevertheless, we would agree with the Commonwealth that the police

activity sheet "does not lend any meaningful support to [Appellant's] claim."

Commonwealth's Brief at 14.  The Commonwealth explains:

> The activity sheet states: "On 5/6/15, Gabriel Ortega was
> transported to the Homicide Unit by Det. Nordo, Det. Santiago,
> and Det. Williams."  [***See*** Appellant's *Pro Se* Response to Rule 907
> Notice, 11/21/23, at "Exhibit 2".]  The sheet also stated that on
> this date, Ortega reaffirmed his identification of [Appellant] and
> agreed to have his statement and identification memorialized by
> way of a video recording.  The sheet indicates only that Nordo was
> one of the detectives who transported Ortega to the homicide unit.
> It does not state that Nordo participated in any of Ortega's
> interviews.  Furthermore, Ortega gave his initial statement

---

[2] It is also well-settled that a petitioner may not raise entirely new claims in a response to a Rule 907 notice, without seeking and being granted leave of court to file an amended petition.  ***See Commonwealth v. Miranda***, 317 A.3d 1070, 1076 (Pa. Super. 2024).  From this, it logically follows that Appellant could not present the police activity sheet to the PCRA court for the first time as an attachment to his response to the court's Rule 907 notice.

implicating [Appellant] on September 25, 2014. The activity sheet states that he was transported to the homicide unit by Nordo and others on May 6, 2015—[over] seven months after he gave his initial identification. There is no evidence whatsoever that Nordo had any contact with Ortega prior to May 6.

*Id.* at 14-15. The record supports the Commonwealth's argument.

In sum, we conclude that no relief is due on Appellant's after-discovered-evidence claim. If the evidence of Dove's and Pitts' misconduct was insufficient in *Brown* to warrant even an evidentiary hearing, despite that they had been directly involved in Brown's case, it is clear that the evidence of Nordo's misconduct in unrelated cases is not sufficient to warrant a *new trial* for Appellant, where he has not established any nexus between his conviction and the misconduct by Nordo in those other cases. *See Commonwealth v. Butler*, No. 788 EDA 2021, unpublished memorandum at 9-10 (Pa. Super. filed June 10, 2022) (relying on *Brown* to conclude that Butler was not entitled to an evidentiary hearing on his after-discovered evidence claim where he only presented "speculative allegations" and "failed to establish a nexus between his convictions and the misconduct of [certain detectives involved in his case] in other unrelated cases"). Ortega never identified Nordo as the detective who bribed him, and there is no evidence showing that Nordo had any interaction with Ortega, or involvement in Appellant's case at all, prior to Ortega's first statement identifying Appellant in September of 2014. There is also no evidence that Nordo bribed Ortega when he and other detectives transported Ortega on May 6, 2015. Appellant's speculation that Nordo must have bribed Ortega simply because of Nordo's

misconduct in other cases, and his limited contact with Ortega on May 6, 2015, is insufficient to demonstrate that Nordo committed misconduct in the instant case. Therefore, the PCRA court did not err in concluding that no relief is due on Appellant's after-discovered evidence claim.

Next, Appellant contends that his

> PCRA counsel was ineffective for failing to raise a discovery issue in relation to police misconduct of the detectives involved. Trial counsel should have also ensured that he received and used full discovery because the allegations of police corruption were known at the time of trial. Therefore, this matter should be remanded for an evidentiary hearing and/or a new trial.

Appellant's Brief at 17.

Essentially, Appellant claims that the Commonwealth had an obligation under ***Brady v. Maryland***, 373 U.S. 83 (1963), to disclose "the habitual misconduct" of Nordo and other detectives, including Detective Gregory Singleton, who Appellant claims was also accused of misconduct in another, unrelated case. Appellant's Brief at 22. Appellant argues that "[t]he detectives involved corrupted a crucial witness and Detective Singleton testified at trial without being impeached as to his own misconduct. He also testified that he was part of a Task Force and … Nordo was part of that Task Force." ***Id.*** (citations to the record omitted). According to Appellant, because

> there was already knowledge of relevant police misconduct, trial counsel was ineffective for not requesting discovery on these issues. PCRA counsel was ineffective for failing to raise this issue. Appellant suffered prejudice because he was denied due process and crucial impeachment and corroboration [evidence,] as well as exculpation material.

***Id.*** at 23.

- 13 -

Initially, we note that Appellant raises this ineffectiveness of PCRA counsel claim for the first time on appeal. In **Commonwealth v. Bradley**, 261 A.3d 382 (Pa. 2021), our Supreme Court held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Id.** at 401. Here, Appellant is represented by new counsel; thus, we will consider his ineffectiveness claim, applying the following standard of review:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland** [**v. Washington**, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali**, **supra**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course

- 14 -

actually pursued." ***Colavita***, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." ***Commonwealth v. King***, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" ***Ali***, … 10 A.3d at 291 (quoting ***Commonwealth v. Collins***, … 957 A.2d 237, 244 ([Pa.] 2008) (citing ***Strickland***, 466 U.S. at 694…)).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

In the instant case, Appellant seems to be asserting that his PCRA counsel was ineffective for not raising, or arguing that his trial/appellate counsel were ineffective for failing to raise, a ***Brady*** claim based on the Commonwealth's failure to disclose to Appellant the misconduct of Nordo and other detectives, including Detective Singleton. As our Supreme Court has explained,

> [i]t is well-settled that ***Brady*** and subsequent precedent flowing therefrom imposes upon a prosecutor the obligation to disclose all favorable evidence that is material to the guilt or punishment of an accused, even in the absence of a specific request by the accused. This Court has held that, to establish a ***Brady*** violation, a defendant has the burden to prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued.

***Commonwealth v. Bagnall***, 235 A.3d 1075, 1085–86 (Pa. 2020) (citations omitted).

Here, Appellant has failed to prove the materiality prong of the ***Brady*** test, or that he suffered prejudice by the Commonwealth's failure to turn over

- 15 -

evidence of misconduct *in other cases* by Nordo, Detective Singleton, or any other detective involved in Appellant's case. As the Commonwealth aptly explains:

> [Appellant's] *Brady* claim with respect to Nordo fails because, as explained above, he has not demonstrated that Nordo played a significant role, let alone committed any misconduct, *in this case*. Without any evidence that Nordo committed misconduct in the present case, [Appellant] cannot prove that he suffered prejudice as a result of the Commonwealth's alleged *Brady* violation.
>
> Furthermore, [Appellant's] allegations about misconduct committed by other detectives involved in the case (particularly Detective Singleton) are also insufficient to warrant relief. [Appellant] has not demonstrated that any of the investigating detectives committed misconduct *in this case*…. Thus, his *Brady* claim must fail.

Commonwealth's Brief at 15-16 (emphasis added).

We agree with the Commonwealth that it had no obligation under *Brady* to turn over evidence of misconduct committed by Nordo or Detective Singleton (or any other detectives) in cases wholly unrelated to Appellant's, as it was not material evidence without some proof that the detectives committed misconduct in this case. Appellant has presented no evidence that any of the detectives, including Nordo, did anything improper in his case, aside from Ortega's claim that a detective offered him a bribe. However, Ortega refused to testify at the PCRA hearing, and has never identified what detective allegedly committed that misconduct. Thus, Appellant has failed to demonstrate that the Commonwealth had material evidence of misconduct *in this case* that it failed to turn over to Appellant in violation of *Brady*. As

such, his PCRA counsel was not ineffective (nor was his trial counsel) for failing
to raise a **Brady** claim.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2026